**SOUTHWESTERN CHEMICAL & GAS CORPORATION, Appellant,**

v.

**SOUTHEASTERN PIPE LINE COMPANY, Appellee.**

No. 14248.

Court of Civil Appeals of Texas.

Houston.

June 13, 1963.

Rehearing Denied July 11, 1963.

Fulbright, Crooker, Freeman, Bates & Jaworski, M. W. Parse, Jr., Houston, for appellant.

Miller B. Walker, Jr., Charles F. Cockrell, Jr., Levert J. Able, Nick C. Nichols, Houston, for appellee.

WERLEIN, Justice.

This is an appeal from the trial court's order denying appellant's application for a temporary injunction. The temporary restraining order previously issued without notice to appellee was dissolved.

Appellant's verified petition alleges a contract dated June 22, 1962 between appellee and Texas Petro Gas Company obligating appellee for a period of five years to deliver gas through its pipe line to a hydro-carbon recovery unit to be installed by Texas Petro Gas Company. The rights of Texas Petro Gas Company under the contract were assigned to appellant on July 15, 1962. Appellant, on the strength of the contract, installed on leased land a hydro-carbon unit on appellee's pipe line at a cost of approximately $75,000.00, and began operations about December 1, 1962 after eliminating some "bugs" in the plant. Appellant's president testified that they had a net profit before depreciation, interest and taxes, of approximately $3,000.00 in both December, 1962 and January, 1963, and about $1500.00 in February, and $3,000.00 in March; and that they could anticipate profits of some $3,000.00 per month before depreciation, interest and taxes, over the five year life of the contract, which had approximately fifty months to run, and which provided for an automatic additional five years unless terminated by either party. He also testified that there was no supply of gas available to appellant's plant other than that going through appellee's line

Under the terms of the contract appellant is obligated to pay appellee for (1) the gas used in the process as metered, (2) the shrinkage of gas, and (3) a product royalty. Appellant alleged under oath that it had complied with all the terms of the contract. Appellee, on the other hand, has alleged under oath that it had sued appellant for $10,000.00 which appellant owed appellee as damages as a result of appellant's failure to account for gas appropriated by appellant in breach of the terms of the contract, but that appellee would reconnect its pipe line to appellant's plant upon payment of $8,000.00 in payment of gas converted or which was not accounted for, without prejudice to the contentions made in said suit.

The present suit was brought by appellant when advised that appellee intended to shut off the supply of gas to appellant's plant. The trial court confined appellant's proof to evidence on two issues: (1) the adequacy of appellant's remedy at law, and (2) the sustaining of irreparable injury. Appellee has denied under oath appellant's allegations with respect to inadequacy of appellant's remedy at law and irreparable injury and has pled its own solvency. Appellant pled specifically with respect to endangering its facilities, as follows: "Such facilities operate at high pressure and should deliveries be discontinued, injury thereto will likely result. Accordingly, immediate and irreparable injury, loss and damage will result to Plaintiff unless Defendant is enjoined as prayed herein." Appellant then pleaded generally: "Plaintiff has no adequate remedy at law. Defendant is wholly unable to respond in damages for (1) damages which would be suffered by Plaintiff for lost profits, or (2) the possible damage to appellant's plant and facilities."

492

The law is well settled in this State that the granting or refusing of a temporary injunction is within the sound discretion of the trial court, and that the court's action will not be disturbed on appeal unless it clearly appears that the court has abused its discretion. Harding v. W. L. Pearson & Co., Tex.Com.App.1932, 48 S.W.2d 964; Southwestern Associated Tel. Co. v. City of Dalhart, Tex.Civ.App., 254 S.W.2d 819, writ ref., n. r. e.; 24-A Tex. Jur. 382, Injunctions, § 265, and cases cited.

In its order denying the temporary injunction the court stated:

"* * * and the court having considered said verified petition, the evidence and argument of counsel, and it appearing that Plaintiff is not entitled to such temporary injunction, for the reason that Plaintiff has an adequate remedy at law, and no irreparable injury proved * * *."

An irreparable injury is "an injury of such a nature that the injured party cannot be adequately compensated therefor in damages, or that the damages which result therefrom cannot be measured by any certain pecuniary standard." Lowe & Archer, Injunctions and Extraordinary Proceedings, Sec. 312, p. 321; Gulf Oil Corporation v. Walton, Tex.Civ.App., 317 S.W.2d 260, and authorities cited.

Appellant's pleading seems to limit irreparable injury to such injury as might result to appellant's plant. The undisputed evidence, however, shows that appellee had cut off the gas supply to appellant's plant prior to the hearing on the temporary injunction, and that the injury to appellant's plant consisted of merely jamming the electrical circuit breaker which damage could be repaired for less than $100.00. Appellant failed to establish that it would suffer irreparable injury as a result of damage to its plant.

Appellant contends that the court abused its discretion in denying appellant a temporary injunction to preserve the status quo for the reason that the undisputed evidence shows (1) that appellant has no adequate remedy at law, and (2) that appellant will suffer irreparable injury. There was no exception to appellant's pleading that it had no adequate remedy at law. Under said Points, appellant first undertakes to show that appellee was insolvent and did not have property subject to execution sufficient to satisfy appellant's claim for damages. Driskill v. Boyd, 181 S.W. 715, Tex.Civ.App.1916, error ref.; Nagy v. Bennett, 24 S.W.2d 778, Tex.Civ.App. 1930, error ref.

Appellant introduced the recent balance sheet of appellee which shows appellee's net worth to be $185,997.11 with fixed assets shown at a book value of $136,063.92, which assets, with the exception of automobiles of the value of $1,970.90, were mortgaged to the Small Business Administration of the Federal Government. Appellant contends that there would be only $141,205.84 available to satisfy its claim of more than $150,-000.00 after deduction of current liabilities. We cannot say as a matter of law that appellee's balance sheet shows that appellee is unable to take care of appellant's claim and its current liabilities, especially in view of the testimony of appellee's comptroller and certified public accountant that such balance sheet shows that appellee was a solvent company, and his further testimony that the company made approximately $15,-000.00 per month, with ratio of current assets to current liabilities 2-to-1.

Appellant contends, however, that the court erred in not permitting it to show on cross-examination of appellee's comptroller that one of appellee's assets listed on the balance sheet of March 19, 1963 consisted of $151,233.54, being an account receivable from Woods Exploration & Producing Co., was not collectible because of such company's financial condition. Appellant's counsel asked such witness whether he knew whether it wasn't a fact that Woods Exploration & Producing Company was currently in some financial difficulty. The

witness stated he knew the company was not. Appellant then asked whether such company was slow in retiring its obligations. The court sustained an objection to this question and stated that it was not going to try the solvency of some other company, that it was appellant's burden to prove that appellee was not solvent.

■ It is our view that the court erred in not permitting appellant to show that this item was not of the value indicated. Since appellant introduced the balance sheet in evidence it could not contradict what the statement showed, but it should have been permitted to examine appellee's comptroller and to show that the company owing such account was slow in retiring its obligations and that such account was probably not collectible. We cannot say that the court committed reversible error in not permitting the witness to answer the one question asked because an affirmative answer thereto would not have established that the account owed by Woods Exploration & Producing Company was not collectible. It is likely, however, that but for the court's ruling, appellant would have asked additional questions. Since appellant was examining appellee's witness, called under the adverse witness rule, it would not have been necessary for appellant, in making a bill of exceptions, to have shown what such witness would have testified in answer to questions asked. It is our view, however, that this did not relieve appellant from asking the questions and perfecting a bill of exceptions if permitted to do so. Cunningham v. Austin & N. W. Ry. Co., 1895, 88 Tex. 534, 31 S.W. 629; Maddox v. Gulf, Colorado & S. F. Ry. Co., Tex.Civ.App., 293 S.W.2d 499, writ ref., n. r. e.

When appellant undertook to interrogate appellee's comptroller relative to the item of $151,233.54 owing by Woods Exploration & Producing Company (which company is, according to appellee's vice president, John Stoker, an employee of both companies, an affiliated corporation), the court stated: "We are not going to try the solvency of some other company. I don't intend to determine whether they are solvent or not solvent. It is your burden to prove that Southeastern Pipe Line Company is not solvent." This is exactly what appellant was trying to do and what the court prevented it from doing, apparently on the theory that appellant, having introduced appellee's balance sheet, could not contradict the same. The court's broad language was calculated not only to deter appellant from asking further questions, but also from perfecting a bill of exceptions.

■ As a general rule documentary evidence is held to be conclusive against the party introducing it. Horwitz v. Jefferson County Traction Company, Tex.Civ.App., 188 S.W. 26, error ref.; McClung Const. Co., Inc. v. Langford Motor Co., Tex.Civ. App.1930, 33 S.W.2d 749; Locke v. Morris, Tex.Civ.App., 287 S.W.2d 500, writ ref., n. r. e. It is our view, however, that this general rule has no application here. Appellant was not undertaking to contradict the balance sheet or to show that the Woods account was not owing in the amount shown. It was merely undertaking to show that such account was uncollectible because of Woods' financial condition. 20 Amer.Jur., pp. 771–2, Sec. 915.

■ Later, appellant undertook to have appellee's comptroller explain a $21,000.00 item listed under Current Assets as "Trade Account Impounded," in order to determine whether such account was an asset available for payment of appellant's asserted claim. The court sustained appellee's objection to appellant's inquiry as to why payment of such item was being withheld. Appellant's counsel then requested the court to permit him to ask the question for the purpose of his bill of exceptions. The court replied, "No, sir. We are not here to find out information on some other law suit. You have introduced a financial statement, and I don't intend to let you hold a court of inquiry as to whether each one of these assets are good or not."

We are of the opinion that the court erred in not permitting appellant to perfect a bill of exceptions. It is likely that appellant would have asked additional questions had it not been prevented from making a bill of exceptions. The refusal of the court to permit appellant to go into, or have the witness explain, the items on the balance sheet prepared by such witness, kept appellant from establishing the financial condition of appellee, its ability vel non to respond in damages, and the inadequacy of appellant's remedy at law. It is our view that the position taken by the court was prejudicial to appellant's rights and constituted an abuse of discretion which requires, in the interest of justice, that the case be reversed. Rules 434 and 503, Texas Rules of Civil Procedure.

In Lower Nueces River Water Supply Dist. v. Sellers, Tex.Civ.App., 323 S.W.2d 324, writ ref., n. r. e., the court stated:

"In any event, these records and data being admissible in evidence, and appellant having been denied the right to place them in the record for the purpose of the bill of exception, was deprived of the right to have this evidence and its probable effect appraised by the appellate court. This prevented appellant from making a proper presentation of the case to the appellate court. Rules 434 and 503, T.R.C.P."

In 31 Tex.Jur.2d, Injunctions, § 227, it is stated:

"* * * However, where the order deprives a party of a right to which he is entitled, such as, by preventing him from introducing evidence that will establish his case, the error is prejudicial and will be reversed on appeal."

See also Driskill v. Boyd, Tex.Civ.App., 181 S.W. 715, writ ref.

 Appellant adduced in evidence without objection testimony of appellee's vice president, Mr. Stoker, that the amount of profit that appellant has in the contract in question would depend upon the amount of gas going through appellee's line, and the liquid content of that gas, and also the price appellant could get for the liquids. The court sustained appellee's objection to appellant's question to such witness as to how much gas would go through the line four years hence, but permitted appellant to show in its bill of exceptions that the witness could not tell for certain how much gas would go through the line four years hence, or the liquid content thereof, or the price of the gas. This question and answer followed:

"Q. And that would be true three years from now?

"A. Yes, sir, and it will be true two months from now."

Appellant was undertaking to establish that it had no adequate remedy at law since it would be practically impossible to show what its profits would be during the fifty months that the contract had to run. The court erred in refusing to consider such evidence as it had an important bearing upon whether appellant had an adequate remedy at law in view of the uncertainties testified to. The law is well settled that the test for determining whether an existing remedy is adequate is whether such remedy is as complete and as practical and efficient to the ends of justice and its prompt administration as is equitable relief. Sumner v. Crawford, 1897, 91 Tex. 129, 41 S.W. 994; 31 Tex.Jur.2d, p. 109, Injunctions, § 44.

In American Refining Company v. Tidal Western Oil Corporation, 264 S.W. 335, Tex.Civ.App.1924, error ref., 114 Tex. 583, 278 S.W. 1114, suit was brought for damages and for an injunction to restrain the refining company from refusing to deliver casinghead gas to plaintiff's plant which had been constructed at a large cost in reliance on the contract. The court stated:

"The Tidal Company has no adequate remedy at law. The damages which it may suffer are extremely uncertain in amount and practically impossible of

ascertainment. It is a matter of common knowledge that in time gas wells will be exhausted, but just when this will occur cannot, in the nature of things, be proven in advance. This contract does not stipulate for liquidated damages, and therefore presents a proper subject of equitable cognizance. * * *"

See also Noble Oil & Gas Co. v. Altex Petroleum Co., Tex.Civ.App.1921, 230 S.W. 758; Municipal Gas Co. v. Lone Star Gas Co., Tex.Civ.App., 259 S.W. 684, aff'd 117 Tex. 331, 3 S.W.2d 790, 58 A.L.R. 797. In Southwest Pipe Line Company v. Empire Natural Gas Co., 33 F.2d 248, 64 A.L.R. 1229, 8th Cir., the defendant had contracted to sell and plaintiff to buy natural gas produced from defendant's wells. The plaintiff sued for an injunction when the defendant threatened to discontinue the supply of gas. The court said: "The damages to be recovered by appellee would seem to be speculative and impossible of proof, for it could not be ascertained what the flow of the wells would be or what decrease would come about in the natural order of events. * * *"

 Appellant did not plead that it would be practically impossible to establish what its loss of profits would be. Ordinarily the petition must state all, and negative all, which is necessary to establish the plaintiff's right to obtain an injunction. Gillis v. Rosenheimer, 64 Tex. 243; Pearson v. Black, Tex.Civ.App., 106 S.W.2d 787; Birchfield v. Bourland, Tex.Civ.App., 187 S.W. 422. Appellant did plead, however, the long term contract and that it had no adequate remedy at law and that appellee is wholly unable to respond in damages which appellant would suffer because of lost profits. It is our view that in the absence of special exception the pleading was sufficient. Fine v. Pratt, Tex.Civ.App.1941, 150 S.W.2d 308, 313.

 We cannot say that appellant has established, as a matter of law, that it has no adequate remedy at law because of the practical impossibility of showing what its lost profits would amount to. The courts draw a distinction in damage suits between uncertainty merely as to the amount and uncertainty as to the fact of legal damages. While uncertainty as to the fact of legal damages is fatal to recovery, uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages. Southwest Battery Corporation v. Owen, 1938, 131 Tex. 423, 115 S.W.2d 1097; Adams v. Hood County Sand & Gravel Co., Tex.Civ.App.1962, 354 S.W.2d 593; Berne v. Keith, Tex.Civ.App.1962, 361 S.W.2d 592, writ ref., n. r. e.

It is our view that in the instant case appellant presented admissible evidence tending to show that it had no adequate remedy at law, and that it was error and an abuse of discretion for the court to refuse to consider such evidence.

 The purpose of a temporary injunction is to maintain the status quo in regard to the matter in controversy and not to determine the respective rights of the parties under the cause of action asserted or defenses urged. James v. E. Weinstein & Sons, Tex.Com.App.1929, 12 S.W.2d 959. As stated in that case, the legitimate purpose of the temporary injunction is merely to preserve the existing condition until a final hearing can be had on the merits. If on another hearing of appellant's application for temporary injunction it is determined that appellant probably has no adequate remedy at law or probably will suffer irreparable damage as a result of the cessation of the delivery of gas to its plant, then a temporary injunction should be issued for the purpose of maintaining the status quo until the case can be heard on its merits. The status quo to be preserved by temporary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy. Transport Company of Texas v. Robertson Transports, 1953, 152 Tex. 551, 261 S.W.2d 549.

Reversed and remanded.