**TEXAS INDUSTRIAL GAS, Appellant,**

v.

**PHOENIX METALLURGICAL CORPORATION, Appellee.**

No. 01–91–00747–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 2, 1992.

**530**

Pamela E. George, Houston, for appellant.

Samuel L. Walsh, Houston, for appellee.

Before TREVATHAN, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

O'CONNOR, Justice.

This court is asked to determine whether the trial court abused its discretion when it denied injunctive relief to plaintiff, Texas Industrial Gas (TIG).[1] TIG sought an injunction to prohibit defendant, Phoenix Metallurgical Corporation (PMC), from purchasing Argon gas from other suppliers. We reverse and remand for additional evidence.

### Fact summary

TIG is an industrial gas and welding equipment supplier. On October 18, 1989, TIG and PMC executed a contract in which TIG (as seller) and PMC (as buyer) agreed that PMC would purchase its entire requirement of Argon gas for five years from TIG. The evidence at the hearing was that the contract was repeatedly rewritten at the insistence of PMC. Paragraph four of the contract required TIG, if

necessary to supply PMC's requirements, to install storage, control, and vaporization equipment. After executing the contract with PMC and based on that contract, TIG contracted with another company to install a $65,000 tank for use by PMC. To pay for the tank, TIG financed the tank with the company that installed it, with which TIG had been doing business for 20 years.

After TIG began supplying Argon gas to PMC, PMC fell into arrears. PMC paid down some of its balance, but, at trial, it owed over $16,000 of the balance due, which triggered a provision of the contract that allowed TIG to impose new payment terms, such as requiring cash on delivery.

TIG also provided PMC with VGL's (vessel gas liquid) for use in an emergency. Using Argon gas from the VGL's is more expensive than using gas from the large tank because the VGL's are a type of thermos container that keep the gas chilled and are delivered individually. In March or April of 1991, a driver for TIG noticed that PMC was using VGLs that belonged to Tech–Weld. TIG claims this was a breach of the contract because PMC was procuring Argon gas from another source. On April 29, 1991, the purchasing agent for PMC stated to Ms. Trail at TIG that PMC would no longer purchase small items from TIG so its bill would not get any bigger.

TIG sought an injunction requesting that PMC be enjoined from the following:

1. Moving or damaging the bulk storage tank belonging to TIG and upon premises of PMC;

2. Contracting for, purchasing, ordering, receiving, or taking delivery directly or indirectly, of Argon gas for use by or on behalf of PHOENIX METALLURGICAL CORP. from any company, firm, entity, person, supplier, or agency except plaintiff, TEXAS INDUSTRIAL GAS;

3. Interfering with the ingress of plaintiff's employees, agents, or any persons designated by plaintiff upon the premises of defendant during weekdays and Saturdays, between the hours of 9:00 a.m. and

---

1. This interlocutory order is appealable under TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(4) (Vernon Supp.1992).

5:00 p.m., at reasonable intervals, not less than weekly, or at any time in the event of emergency circumstances which in the sole discretion of plaintiff threaten destruction or damage to plaintiff's bulk storage tank, in order to conduct inspection, maintenance, and repair of plaintiff's bulk storage tank on defendant's premises; and

4. Interfering with the ingress of Plaintiff's employees, agents, or persons designated by Plaintiff upon the premises of Defendant during weekdays and Saturdays, between the hours of 9:00 a.m. and 5:00 p.m., for the purpose of removal of the bulk storage tank on defendant's premises.

After a hearing on this request for injunction, the parties agreed to the conditions of paragraphs 1, 3, and 4. The trial court entered an injunction as to the agreed paragraphs and, without stating a reason, granted PMC's motion for instructed judgment, and refused to temporarily enjoin PMC from purchasing Argon gas from other companies.

### Standards of review

The applicant for an injunction must plead a cause of action, show a probable right to recover the relief sought, and a probable injury in the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968); *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 756 (Tex. App.—Houston [1st Dist.] 1982, no writ). The applicant must show also that it has no adequate legal remedy. *Surko Enters., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.—Houston [1st Dist.] 1989, no writ). For a legal remedy to be adequate, it must give the applicant complete, final, and equal relief. *David*, 630 S.W.2d at 756.

At the hearing for a temporary injunction, the only question before the trial court is whether the applicant was entitled to an order to preserve the status quo pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ). The status quo is defined as the last, actual, peaceable, noncontested status that preceded the controversy. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

A trial court may not issue a temporary injunction except to prevent a threatened injury. *Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc.*, 156 Tex. 408, 295 S.W.2d 873, 879 (1956); *see also Ginther–Davis Center v. Houston Nat'l Bank*, 600 S.W.2d 856, 863 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). The commission of the act to be enjoined must be more than just speculative, and the injury that flows from the act must be more than just conjectural. *Otten v. Town of China Grove*, 660 S.W.2d 565, 569 (Tex.App.—San Antonio 1983, writ dism'd); *see also Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 611 (Tex.App.—Houston [1st Dist.] 1991, no writ). The trial court will abuse its discretion if it grants a temporary injunction when the evidence does not clearly establish that the applicant is threatened with an actual, irreparable injury. *Manufacturers Hanover*, at 610.

Our review of the temporary injunction is limited to deciding whether the trial court abused its discretion; we are not to resolve the merits of the underlying case. *Davis*, 571 S.W.2d at 861–62; *Moreno v. Baker Tools, Inc.*, 808 S.W.2d 208, 211 (Tex.App.—Houston [1st Dist.] 1991) (orig. proceeding). We will not substitute our judgment for that of the trial court, but will limit our review to whether the court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Davis*, 571 S.W.2d at 862; *Moreno*, 808 S.W.2d at 211.

If we find the trial court misapplied the law to established facts or if it concluded the applicant had a probable right of recovery and that conclusion is not reasonably supported by the evidence, we will find that the court abused its discretion. *Southwestern Bell Tel. Co.*, 526 S.W.2d at 528; *Miller v. K & M Partnership*, 770

S.W.2d 84, 87 (Tex.App.—Houston [1st Dist.] 1989, no writ).

TIG argues the trial court abused its discretion in denying the temporary injunction. TIG claims PMC's arrearage hurt its relationships with its other customers and its suppliers because TIG was not able to pay its suppliers who then required cash on delivery. TIG argues if PMC does not pay it, TIG cannot pay its supplier and, therefore, TIG cannot service its other accounts.

## 1. Irreparable harm

In points of error one and two, TIG argues the trial court erred in denying the temporary injunction because without an injunction, TIG will suffer irreparable harm.

 An irreparable injury is an injury for which the injured party cannot be adequately compensated in damages, or one for which the damages cannot be measured by any certain pecuniary standard. *Southwestern Chem. & Gas Corp. v. Southeastern Pipe Line Co.*, 369 S.W.2d 489, 492 (Tex.Civ.App.—Houston 1963, no writ).

 TIG offered proof that unless the court granted the temporary injunction, TIG would suffer irreparable harm because: 20 percent of its business is with PMC; TIG cannot pay for the tank it installed for PMC without the regular purchases of Argon from PMC, and the tank could be repossessed; if the tank is repossessed, it will ruin TIG's impeccable 20-year credit it had established with its suppliers; PMC is experiencing a cash flow problem and has greater liabilities than assets; and if PMC is insolvent when this case goes to trial, it will not be able to pay for the tank and for the gas already delivered. PMC offered no evidence at the hearing. There is no evidence that supports the trial court's conclusion that no irreparable harm would result; all the evidence tends to support the probability that of harm.

We find that TIG's evidence supports the conclusion of probable injury and it was an abuse of discretion to refuse to grant the injunction. We sustain points of error one and two.

## 2. Adequate remedy at law

In point of error three, TIG argues the trial court erred in denying the temporary injunction because it has no adequate remedy at law.

 An applicant for a temporary injunction must establish it has no adequate remedy at law; if it does not, the court must refuse to grant an injunction. *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex.App.—Dallas 1990, no writ). For the purposes of injunctive relief, there is no adequate remedy at law if damages are incapable of calculation or if the defendant is incapable of responding in damages. *Bank of Southwest v. Harlingen Nat'l Bank*, 662 S.W.2d 113, 116 (Tex. App.—Corpus Christi 1983, no writ). In *Surko*, we said a plaintiff does not have an adequate remedy of law if the defendant is going to be insolvent before trial. 782 S.W.2d at 225. In *Surko*, the defendant was not paying other creditors and was in a great deal of financial distress. *Id.; see also Ballenger v. Ballenger*, 694 S.W.2d 72, 77 (Tex.App.—Corpus Christi 1985, no writ) (the Corpus Court dissolved a temporary injunction because the plaintiff did not prove that the defendants were insolvent or unable to respond in damages).

In *Surko*, the defendant argued that there was no evidence it was insolvent and could not pay a money judgment. 782 S.W.2d at 225. The plaintiff, however, produced evidence that the defendant was not paying its other creditors and was transferring collateral. *Id.* One witness testified the defendant was in a great deal of financial distress. *Id.* We said this was enough to support the injunction the trial court granted. *Id.* So, between *Surko*, in which we affirmed such evidence, and *Ballenger*, which reversed because there was no such evidence, we draw the conclusion that insolvency can be a factor in determining whether there is an adequate remedy at law.

 Here, Melvin P. Trail, president of TIG, testified that PMC was a slow payer;

again and again PMC promised to deliver a check and then did not. Rebecca Trail, the wife of Melvin and an officer of TIG, testified that PMC often said it would pay, and then when she went to pick up the check, it was not there. Marlise Valice, an accountant and former controller of PMC, testified that PMC had a cash flow problem. She testified the company had more liabilities than assets. PMC owed over a million dollars to vendors, $43,000 to its landlord, and about $850,000 to the bank, for a total of at least $1,893,000 in liabilities. PMC had receivables of about $64,000, it had $540,000 in inventory, and other assets of $200,000, for a total of $804,000 in assets. She also testified that PMC's balance sheet did not reflect all of its liabilities. Joe Lopez, formerly an engineer with PMC, testified that PMC listed inventory of about $100,000 that did not exist. He testified that Mr. Patterson decided what to show as profit and what to list as payables each month.

The only evidence in the record demonstrates a probable PMC insolvency and a probability that PMC would not be able to respond in damages to TIG. It is particularly relevant that PMC presented no controverting evidence, even though the record shows that Mr. Patterson was present in the courtroom during the hearing.

We sustain point of error three.

### 3. Probable right to recovery

In point of error four, TIG argues the trial court abused its discretion in denying the temporary injunction. Under this point, we will review the record to determine if TIG proved a probable right to recover.

▮ A review of the evidence reveals TIG proved a probable right to recovery and a probable injury in the interim. TIG's underlying suit is a breach of contract. The evidence presented at the temporary injunction hearing shows PMC executed a contract to purchase Argon gas exclusively from TIG; based on that contract, TIG incurred debts of over $68,000 to install a tank to hold the gas; PMC has a continu-

ing need to purchase Argon gas for its business; thus, if PMC is enjoined from buying from others, PMC would purchase the Argon gas from TIG.

We note that the contract permits TIG to impose new conditions for payment in the event that PMC does not pay its bills. On remand, should the trial court grant an injunction, we instruct the trial court to determine the specific equitable terms for payment by PMC to TIG that are appropriate until trial. *See Stocks v. Banner American Corp.*, 599 S.W.2d 665, 668 (Tex. App.—Texarkana 1980, no writ) (court of appeals remanded order of injunction to trial court to enter a more limited order); *cf. French v. Community Broadcasting of Coastal Bend, Inc.*, 766 S.W.2d 330, 336 (Tex.App.—Corpus Christi 1989, writ dism'd w.o.j.) (court of appeals modified the trial court's order). The rules of procedure require the trial court to state specific terms in its order for temporary injunction. Tex.R.Civ.P. 683.

We sustain point of error four.

### 4. No theory to support denial

In point of error five, TIG argues the trial court erred in refusing the injunction because no theory exists nor is established by the evidence that supports the trial court's denial. TIG filed a request for findings of fact and conclusions of law, but the trial court did not file them. In an appeal of a temporary injunction, the trial court has the discretion to file findings of fact and conclusions of law. Here, the trial court did not file findings.

▮ Because the trial court did not file any findings of fact or conclusions of law, on appeal we must uphold the order of the trial court unless it is not supported by any legal theory. *Davis*, 571 S.W.2d at 862. To meet this burden, TIG argues that there is no legal theory that supports the trial court's denial of the injunction.

### A. No irreparable injury

TIG argues that the trial court could not have based its denial of the injunction on the lack of irreparable injury. TIG states

that it proved irreparable injury by the testimony, as summarized above, that: PMC represents 20 percent of its business; TIG paid over $65,000 for a tank for PMC; without the regular purchases from PMC it would not be able to pay for the tank, and it could be repossessed; if the tank is repossessed it will ruin TIG's impeccable 20–year credit history; if TIG is unable to pay its suppliers it cannot get products from them; if TIG is unable to get products from its suppliers, it cannot service other accounts. We agree with TIG's analysis of the evidence.

**B. Adequate remedy at law**

TIG argues that the trial court could not have based its denial of the injunction on an adequate remedy at law. TIG restates its premise here: The questionable financial structure of PMC established that there is no adequate remedy at law. We agree with TIG's analysis of the evidence.

**C. Unclean hands**

TIG argues that the trial court could not have based its denial of the injunction on its unclean hands. At the hearing, PMC offered no evidence to support an allegation of unclean hands. The uncontroverted evidence was that TIG refused to make deliveries to PMC only because PMC refused to pay as required by the contract. We agree with TIG's analysis of the evidence on this record.

We sustain point of error five.

**Summary**

We hold that, at the close of the plaintiff's evidence, the trial court abused its discretion in denying the temporary injunction. Because the trial court refused the injunction after the plaintiff rested and before the defendant had the opportunity to present evidence, we remand this case for the trial court to hear additional evidence.

WILSON, Justice, dissenting.

The trial court conducted a hearing on appellant's application for temporary injunction. At the close of appellant's offer of evidence, and prior to presenting any evidence, appellee moved for an instructed verdict on the specifically stated ground that appellant had failed to prove irreparable harm. This motion was granted by the trial judge. The majority finds this decision was an abuse of discretion. I respectfully dissent because I believe the majority is mistaken in concluding the trial judge acted outside acceptable boundaries of discretion in deciding the issue of irreparable harm.

I would hold the only issue on appeal is whether the trial judge abused his discretion in deciding appellant failed to prove irreparable harm. Notwithstanding the briefing relative to other elements of proof necessary to obtain a temporary injunction, I believe it is appropriate for us to review only the narrow issue the trial judge decided.

With respect, the majority's decision is in conflict with our Court's holding in *Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 611 (Tex. App.—Houston [1st Dist.] 1991, no writ). In *Manufacturers Hanover*, our Court reversed a trial court that based an entry of an order of temporary injunction on what "may" or "might" happen to the applicant. "Moreover, an injunction will not lie to prevent injury that is purely conjectural." *Id.* (citing *Otten v. Town of China Grove*, 660 S.W.2d 565, 569 (Tex.App.—San Antonio 1983, writ dism'd)).

The majority states in its opinion that: (1) the tank *could* be repossessed; (2) *if* the tank is repossessed, it will ruin appellant's credit; (3) *if* appellee is insolvent when the case goes to trial, it will not be able to pay for the tank and for the gas already delivered, and (4) all the evidence tends to support the *probability* of harm. All of the emphasized words, taken as true, are to some degree, conjecture. Further, some of the concepts of damages discussed by the majority (e.g., ruin of appellant's credit) sound in tort rather than in the simple breach of contract case pled by appellant.

The majority also comments on its section devoted to irreparable harm that if appellee is insolvent at the time of trial,

appellee could not pay for the tank. I find no provision in the contract that requires appellee to pay for the tank in the event of a breach. In fact, the contract does not require appellant to buy a tank, only to install one if necessary. In the event appellee's need for product ended during the term of the contract, appellee was obligated to pay for the cost of removal of the equipment, plus any unamoritized equipment installation cost. Under the contract, any ultimate recovery of the cost of the tank is also speculative.

I would affirm the trial court's decision for the reason the trial judge did not clearly abuse his discretion in granting appellee's motion for instructed verdict. *Manufacturers Hanover*, 819 S.W.2d at 610.