TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00052-CV






Universal Health Services, Inc.; RCW of Edmond, Inc.; Renaissance Women's Center of


Austin L.L.C.; and Renaissance Women's Center of Austin, L.P., Appellants



v.



Margaret Thompson, M.D.; Linda Litzinger, M.D.; Donna Hurley, M.D.; Melanie


Collins, M.D.; Sherry Neyman, M.D.; Laura Meritt, M.D.; Byron Darby,


M.D.; and Renaissance Women's Group, P.A., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 99-14404, HONORABLE PAUL DAVIS, JUDGE PRESIDING






 This dispute grows out of a good idea that proved financially disappointing. 
Certain corporate investors contracted with a group of Austin gynecologists and obstetricians to
open a unique medical facility housing a hospital, clinic, and doctors' offices, all dedicated to
women's health care needs. Appellants are "the Investors" who owned and operated the facility;
appellees are "the Doctors" who located their offices in the facility and sent their patients to its
hospital. When the facility continued to lose money, the Investors decided to close the hospital. 
The Doctors responded by suing for breach of contract and fraud and seeking a temporary
injunction to prevent the Investors from closing the hospital pending a trial on the merits, which
is scheduled for August 7, 2000. The trial court granted the Doctors' application for a temporary
injunction. In eight points of error, the Investors bring this consolidated, interlocutory appeal
challenging both the order granting the injunction and a subsequent order denying their motion
to dissolve the injunction. (1) We will affirm both orders.


BACKGROUND

 In 1995, the Investors (2) approached Margaret Thompson and Linda Litzinger,
doctors specializing in obstetrics and gynecology, with the concept of a multi-service women's
health care center to be known as Renaissance Women's Center of Austin (the Center). The two-story facility would offer a women's hospital on the first floor and physicians' offices and a clinic
on the second floor. Thompson and Litzinger decided to commit to the project and on October
11, 1995, entered into a lease and letter agreement (the Agreement) with the Investors
memorializing their commitment to the contemplated Center. (3) The Agreement provides in
relevant part: 

5. Renaissance shall use reasonable efforts to obtain, and maintain in full force
and effect throughout the Term of the Lease, written agreements . . .
certifying the Project as an approved hospital by all health insurance
companies, health maintenance organizations, health care plans or other health
care benefit providers . . . for which [the Doctors] are approved providers.


 . . . .


8. This letter agreement shall remain in effect and binding on Renaissance and
[the Doctors] throughout the term of the Lease. In the event of any conflict
or inconsistency between the provisions of this letter agreement and the
provisions of the Lease, the provisions of this letter agreement shall govern
and control.


 . . . .


9. Each of Renaissance and [the Doctors] agree to act reasonably and in good
faith in all of the matters which require the cooperation, approval or joinder
of these parties under the provisions of this letter agreement. (4)



 The Investors built a two-story building to house the facility, and the Center opened
on September 7, 1997.

 Throughout its operation, the Center suffered serious financial losses, allegedly due
in part to managed care companies' low reimbursement levels for women's medical procedures. 
In late 1999, the Investors decided to close the hospital. Upon learning of the Investors' intention,
the Doctors filed a lawsuit on December 10, pleading breach of contract and fraud. The Doctors
claimed in part that the Investors had breached paragraph five of the Agreement by failing to use
reasonable efforts throughout the term of the lease to certify the Center as a hospital approved by
all insurance companies and health maintenance organizations for which the Doctors are approved
providers. The Doctors also sought a temporary and a permanent injunction to prevent the closing
of the Center. In their request for a temporary injunction, the Doctors claimed that they "have
and are suffering harm and irreparable harm as a result of the actions of [the Investors]" and
sought to enjoin the Investors "from closing the hospital, selling the hospital, reducing the hospital
staff or nurses, or reducing the quality of women's health care services" during the pendency of
the suit.

 Following a hearing, the trial court granted the temporary injunction. In support
of its decision, the court made the following findings: (1) the Doctors have a probable right of
recovery; (2) the Doctors will suffer imminent, irreparable harm in the absence of the injunction;
(3) the Doctors have no adequate remedy at law for their interim damages, and their financial
damages will be immeasurable; and (4) the balance of hardships and the public interest favors an
injunction maintaining the status quo. Until judgment is rendered in the pending suit, the
Investors are enjoined from closing the hospital or changing its status from the women's health
care hospital that was in operation as of the date the Doctors filed their petition. The trial court
further ordered the Investors to "continue to use reasonable efforts to obtain, and maintain in full
force and effect . . . written agreements certifying the hospital . . . as an approved hospital by all
health care insurance companies, health maintenance organizations, health care plans or other
health care benefit providers for which [the Doctors] are approved providers." Having lost at the
hearing, the Investors filed a motion to dissolve the temporary injunction based on fundamental
error and changed circumstances. The trial court denied the motion. The Investors now appeal
both the trial-court order granting the temporary injunction and the order refusing to dissolve it.


DISCUSSION

Standard of Review

 The purpose of a temporary injunction is to preserve the status quo pending a trial
on the merits. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993). In an appeal from an
order granting or denying a request for a temporary injunction, appellate review is confined to the
validity of the order that grants or denies the injunctive relief. See id. The decision to grant or
deny the injunction lies within the sound discretion of the court, and we will not reverse that
decision absent a clear abuse of discretion. See id. This Court may neither substitute its judgment
for that of the trial court nor consider the merits of the lawsuit. See id.; Texas Indus. Gas v.
Phoenix Metallurgical Corp., 828 S.W.2d 529, 532 (Tex. App.--Houston [1st Dist.] 1992, no
writ). Rather, we view the evidence in the light most favorable to the trial court's order,
indulging every reasonable inference in its favor, and determine whether the order was so
arbitrary as to exceed the bounds of reasonable discretion. See CRC-Evans Pipeline Int'l, Inc.
v. Myers, 927 S.W.2d 259, 262 (Tex. App.--Houston [1st Dist.] 1996, no writ). We cannot
reverse a trial court's order if the trial court was presented with conflicting evidence and the
record includes evidence that reasonably supports the trial court's decision. See id.

 An applicant requesting a temporary injunction is not required to establish that she
will prevail at trial. See Walling, 863 S.W.2d at 58. The applicant's burden is to establish a
probable right of recovery following a trial on the merits and a probable injury in the interim,
warranting preservation of the status quo pending the trial. See id. at 57.


Mandatory or Prohibitive Injunction

 As a preliminary matter, the Investors argue that although the temporary injunction
is couched in terms of prohibiting them from closing the hospital, the order is really mandatory
in nature because it requires the Investors to seek funding to keep the hospital open. A mandatory
injunction, urge the Investors, should be denied unless the right to relief is clear and compelling
and a case of extreme necessity or hardship is presented. See Rhodia, Inc. v. Harris County, 470
S.W.2d 415, 419 (Tex. Civ. App.--Houston [1st Dist.] 1971, no writ).

 A mandatory injunction requires conduct from a party, whereas a prohibitive
injunction forbids conduct. See LeFaucheur v. Williams, 807 S.W.2d 20, 22 (Tex. App.--Austin
1991, no writ). The primary function of the trial court's order here is to forbid the Investors from
closing the hospital or changing its status. The order does not include any provisions mandating
the Investors to seek funding for the hospital, nor did the Doctors request such relief. If the effect
of the order implies that the Investors must seek funding, this implication is only incidental to the
order's primary function of preventing the Investors from closing the hospital, and we will not
presume such an order is mandatory. See Woodward v. Smith, 253 S.W. 847, 853 (Tex. Civ.
App.--Austin 1923, no writ). We hold that the trial court's temporary injunction is prohibitive;
its ordering provisions are preventive in nature and necessary for the preservation of the status
quo.

Preserving the Status Quo

 The Investors further contend that because the order requires that they take some
affirmative action, it disturbs the status quo. Status quo is defined as "the last, actual, peaceable,
noncontested status which preceded the pending controversy." Transport Co. v. Robertson
Transports, Inc., 261 S.W.2d 549, 553-54 (Tex. 1953) (internal quotations omitted). "If an act
of one party alters the relationship between that party and another, and the latter contests the
action, the status quo cannot be the relationship as it exists after the action." Benavides Indep.
Sch. Dist. v. Guerra, 681 S.W.2d 246, 249 (Tex. App.--San Antonio 1984, writ ref'd n.r.e.). If
it were otherwise, the granting of an injunction would be rendered impossible. See id.

 We hold that the trial court's temporary injunction preserves the status quo by
ordering that operations continue as they existed prior to the Investors' attempt to close the
hospital. It was the Investors' decision to close the hospital that altered the parties' relationship. 
This dispute arises from the attempted closing. Therefore, the status quo is the relationship of the
Investors and the Doctors as it existed prior to the Investors' decision to close the hospital.


Probable Right to Recovery, Irreparable Harm, Adequate Remedy, Balancing Equities

 In their second, third, and fourth points of error, the Investors complain that the
court abused its discretion in granting the temporary injunction because the Doctors failed to
prove a probable right of recovery, irreparable harm, and the absence of an adequate remedy at
law. In their fifth point of error, the Investors complain that the trial court erred in balancing the
equities in favor of the temporary injunction.

 To establish a probable right to recovery, the Doctors must have a cause of action
for which they may be granted relief. See Walling, 863 S.W.2d at 58; Surko Enter., Inc. v. Borg-Warner Acceptance Corp., 782 S.W.2d 223, 225 (Tex. App.--Houston [1st Dist.] 1989, no writ)
(probable right to recovery includes element of wrongful conduct). Irreparable harm is an
element of the probable injury requirement that the Doctors must satisfy in order to obtain a
temporary injunction. See Surko Enter., 782 S.W.2d at 225 (probable injury includes elements
of imminent harm, irreparable injury, and no adequate remedy at law). To demonstrate probable
injury or harm, an applicant must show an injury for which there can be no real legal measure of
damages or none that can be determined with a sufficient degree of certainty, i.e., a
noncompensable injury. See Texas Indus. Gas, 828 S.W.2d at 533; Martin v. Linen Sys. for
Hosps., Inc., 671 S.W.2d 706, 710 (Tex. App.--Houston [1st Dist.] 1984, no writ) (examples of
noncompensable injuries include company's loss of clientele, goodwill, marketing techniques, and
office stability). An adequate remedy at law is one that is as complete, practical, and efficient to
the prompt administration of justice as is equitable relief. See Texas Indus. Gas, 828 S.W.2d at
532; Surko Enter., 782 S.W.2d at 225 (quoting Ballenger v. Ballenger, 694 S.W.2d 72, 76 (Tex.
App.--Corpus Christi 1985, no writ)).

 The record before us does not include specific findings of fact and conclusions of
law. Therefore, we will uphold the trial court's judgment on any legal theory supported by the
record, indulging all reasonable presumptions in favor of there having been sufficient evidence
to sustain the trial court's judgment. See Martin, 671 S.W.2d at 708-09. 

 Here, the wrongful conduct alleged was a breach of contract. (5) This claim rests on
the Investors' alleged failure to use reasonable efforts to maintain written agreements with
insurance companies and health maintenance organizations. The evidence adduced in support of
the wrongful conduct included the 1995 Agreement. Based on the Doctors' cause of action for
breach of contract and the evidence adduced to sustain it, we hold the trial court did not abuse its
discretion in finding that the Doctors had a probable right to recovery. (6)

 The Doctors also adduced evidence of irreparable harm for which there is no
adequate remedy at law. The Doctors' burden was to show that an award of damages would be
inadequate for the harm suffered; they were not required to show that an award of damages would
be wholly ineffectual. See Walling, 863 S.W.2d at 58 ("Simply because the applicant . . . asks
only for damages as ultimate relief does not guarantee that damages are completely adequate as
a remedy."); Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). An
award of damages may be deficient if the nature of the Doctors' losses makes damages difficult
to calculate. See Roland Mach. Co., 749 F.2d at 386. The trial court's order reflects that if the
hospital were to close or change its status from a women's health care hospital, the Doctors would
be unable "to provide to their pregnant mothers the care that they now receive and expect [or] to
ensure the utmost safety of those mothers upon the delivery of their babies." One of the
witnesses, Dr. Thompson, noted two instances where the ability of the Doctors to rush the patients
downstairs to the hospital within minutes possibly saved the lives of the babies being delivered. 
The Doctors also provided some evidence that other area facilities may not have the capacity to
accommodate all of the Center's patients. (7) This evidence was sufficient for the trial court to
conclude that the Doctors would likely suffer irreparable injury and that the nature of the Doctors'
and their patients' losses would make damages incapable of calculation.

 The Investors also complain that the district court erred in considering Universal
Health Services' financial status in balancing the hardships and concluding that the equities
weighed in favor of granting the temporary injunction. (8) In considering an application for a
temporary injunction, a trial court "balances the equities of the parties and the resulting
conveniences and hardships." Surko Enter., 782 S.W.2d at 225. The trial court here balanced
the hardship to the Doctors, as well as the public interest of the patients and their babies, against
the hardship to the Investors in maintaining the status quo until August 7, the date set for the trial. 
In doing so, the court noted that over 1000 babies were scheduled to be delivered during the eight
months before the trial. The court also acknowledged some evidence that other area facilities may
not be adequately equipped to handle the delivery and care of all of those babies. The trial court
based its decision to maintain the status quo on the health risks involved if the hospital were
closed. Indeed, the court's order states, "Maintaining the status quo of the hospital as the
Renaissance Women's Center as a women's hospital will ensure that the quality of care these
mothers and their babies expect to receive will not be compromised. The equities are balanced
in favor of the [Doctors] because of the risks involved in closing the hospital." (Emphasis added.) 
While there were no doubt equities on both sides, we cannot say the trial court abused its
discretion in balancing them in favor of the Doctors and their patients.

 Applying the appropriate standard of review and viewing the evidence in the light
most favorable to the trial court's order, as we must, we hold that appellants have not shown that
the trial court abused its discretion in granting the temporary injunction. Our holding is limited
to whether the trial court abused its discretion in attempting to preserve the status quo until August
7, the scheduled date of the trial. We note that if the Doctors had lost on the motion for a
temporary injunction, the Investors had closed the hospital, and the trial court later determined
that the Investors had breached the terms of the Agreement, the remedy of compelling the
Investors to comply for a while longer with the reasonable efforts mandated in the Agreement
would no longer be viable. While the Investors may have presented conflicting evidence in
support of their claim that they should not be required to continue operating the hospital or that
they have used reasonable efforts in accordance with the Agreement, we will not address the
merits of the Investors' defenses on this interlocutory appeal.


Specificity of the Temporary Injunction

 In its first and sixth points of error, the Investors argue that the trial court erred
in granting an open-ended, over-broad injunction requiring the Investors to continue operations
without specifying how the operations should be funded. The law in Texas regarding the
specificity of temporary injunctions is that they must be 


as definite, clear and precise as possible and when practicable [they] should inform
the defendant of the acts he is restrained from doing, without calling on him for
inferences or conclusions about which persons might well differ and without
leaving anything for further hearing. But obviously the injunction must be in
broad enough terms to prevent repetition of the evil sought to be stopped, whether
the repetition be in form identical to that employed prior to the injunction or (what
is far more likely) in somewhat different form calculated to circumvent the
injunction as written.



San Antonio Bar Ass'n v. Guardian Abstract & Title Co., 291 S.W.2d 697, 702 (Tex. 1956)
(internal quotations and citations omitted).

 The order before us enjoins the Investors "from closing the hospital at the
Renaissance Women's Center, [or] changing the status of the hospital from the women's health
care hospital that was in operation as of December 10, 1999, the date of the filing of Plaintiff's
Original Petition, until judgment in this cause is rendered by this Court." The Investors are in
the business of running hospitals and have been running this Center for almost three years. The
trial court was not required to examine the specific details associated with running the hospital
prior to December 10 in order to spell out what is necessary to maintain the status quo. A
temporary injunction should not be greatly concerned with "rights of the defendants that are
asserted largely in the abstract. Otherwise, it would probably take longer to write the decree than
it would to try the case and the injunction might well become unintelligible and self-destructive." 
Id.; see Wesware, Inc. v. State of Texas, 488 S.W.2d 844, 849 (Tex. Civ. App.--Austin 1972, no
writ). We overrule the Investors' complaints that the order is unworkable because it does not
sufficiently spell out the details of compliance.


Reopening the Case

 In their seventh point of error, the Investors complain that the trial court erred in
refusing to reopen the hearing on the application for a temporary injunction to allow more
thorough exploration of the capacity of existing facilities to accommodate the Center's potentially
displaced patients and their babies. Rule 270 of the Texas Rules of Civil Procedure provides: 
"When it clearly appears to be necessary to the due administration of justice, the court may permit
additional evidence to be offered at any time . . . ." Tex. R. Civ. P. 270. "The decision to re-open a case to admit additional evidence is within the trial court's sound discretion." Turner v.
Lone Star Indus., Inc., 733 S.W.2d 242, 245 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd
n.r.e.). We will not overturn a trial court's decision absent a clear abuse of discretion. See id.

 The record before us reflects that the Investors produced Brian Blessing, a hospital
administrator for the Center, as a witness. Blessing provided testimony indicating that Southwest
Seton would have the capacity to accommodate between 800 and 1400 deliveries per year, thereby
refuting the Doctors' evidence of insufficient capacity in the area hospitals. It was within the trial
court's discretion to determine whether additional evidence regarding capacity was necessary to
the due administration of justice. The court was under no duty to allow the Investors another
opportunity to litigate the same issue prior to the trial on the merits. We cannot say that the trial
court abused its discretion in refusing to reopen the evidence. The Investors' seventh point of
error is overruled.


Changed Circumstances and Fundamental Error

 In their final point of error, the Investors insist that the court erred in denying their
motion to dissolve the temporary injunction in light of newly discovered evidence, changed
circumstances, and fundamental error. A determination of whether to dissolve a temporary
injunction lies within the sound discretion of the trial court, and we will not overrule its
determination absent an abuse of discretion. See Tober v. Turner, Inc., 668 S.W.2d 831, 834
(Tex. App.--Austin 1984, no writ). A trial court may modify a temporary injunction because of
fundamental error or changed circumstances but has no duty to reconsider the grant of a
temporary injunction if the movant fails to present new evidence showing fundamental error or
changed conditions. See Henke v. Peoples State Bank, 6 S.W.3d 717, 721 (Tex. App.--Corpus
Christi 1999, pet. dism'd w.o.j.). The purpose of the motion to dissolve is "to provide a means
to show that changed circumstances or changes in the law require the modification or dissolution
of the injunction; the purpose is not to give an unsuccessful party an opportunity to relitigate the
propriety of the original grant." Tober, 668 S.W.2d at 836. 

 Fundamental error exists when "the record shows the court lacked jurisdiction or
that the public interest is directly and adversely affected as that interest is declared in the statutes
or the Constitution of Texas." Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982). "Changed
circumstances are conditions that altered the status quo existing after the temporary injunction was
granted or that made the temporary injunction unnecessary or improper." Henke, 6 S.W.3d at
721.

 The Investors argue that the trial court should have granted the motion to dissolve
the temporary injunction because of new evidence they presented. The new evidence consisted
of testimony from Laraine McIntyre, the Director of Women's Health Services for St. David's
Hospital. McIntyre testified that St. David's Hospital has sufficient capacity to deliver the babies
scheduled to be born at the Center prior to the August 7 trial on the merits. This evidence,
however, is not evidence of changed circumstances or of fundamental error. The Investors did
not demonstrate how this evidence altered the status quo. Instead, McIntyre's testimony was
merely additional conflicting evidence regarding the capacity of other hospitals to accommodate
the Center's patients. The trial court did not abuse its discretion in denying the motion to dissolve
when it was presented with additional conflicting evidence.

 The Investors also argue that since the granting of the temporary injunction, the
hospital's operating losses have increased. In their motion to dissolve, the Investors contend that
the trial court did not clearly provide in its order how they should continue to fund the hospital
operations. However, prior to the granting of the temporary injunction, the trial court was made
aware of the hospital's operating losses. Upon balancing the equities, the trial court determined
that a temporary injunction was necessary to preserve the status quo pending a trial on the merits. 
The Investors did not provide any new evidence of conditions that altered the status quo or
revealed fundamental error. As we stated in Tober, the trial court has no duty to reconsider the
validity of its original grant of the temporary injunction absent such new evidence. See Tober,
668 S.W.2d at 835. We overrule the Investors' final point of error.


CONCLUSION

 Having overruled all of the Investors' points of error and determined that the trial
court did not abuse its discretion in granting the Doctors' application for a temporary injunction
or in denying the Investors' motion to dissolve the temporary injunction, we affirm both trial-court
orders.



 
 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 13, 2000

Publish

1. A party may appeal from a district court's interlocutory order granting a temporary
injunction or overruling a motion to dissolve a temporary injunction. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(4) (West Supp. 2000).
2. Initially, Renaissance Centers for Women, Inc., an Oklahoma based corporation,
approached the Doctors with the concept for a women's health care facility. That corporation was
subsequently acquired by another corporation, RCW of Edmond, Inc. (RCW). RCW then created
a limited partnership, Renaissance Women's Center of Austin, L.P., for the purpose of developing
the proposed facility in Austin. After the facility was completed, a limited liability corporation,
Renaissance Women's Center in Austin, L.L.C., was formed to own and operate the first floor
hospital. The limited partnership retained ownership of the second floor doctors' offices. For
the sake of convenience, we refer to all of these entities collectively as the Investors.
3. Although Thompson and Litzinger were the only two doctors involved at this stage of the
Center's development, the 1995 letter agreement and all subsequent agreements were binding on
any of the physicians employed by them, including all the doctor appellees.
4. The parties subsequently entered into a Second Agreement and a Second Modification and
Ratification of Lease Agreement. The primary purpose of these agreements was to reflect
subsequent name changes of the parties and to affirm their respective interests and obligations. 
The Second Modification and Ratification of Lease Agreement also acknowledged the Investors'
satisfaction of certain obligations under the 1995 Agreement.
5. The Investors also argue that injunctions are not appropriate remedies for breach of contract
claims because money damages are sufficient to compensate for these claims. The supreme court
addressed this issue in Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993), in which it held that
a trial court may grant a temporary injunction to preserve the status quo even though the cause
of action is for damages resulting from breach of contract and does not request equitable relief. 
6. Our decision on this point is not a reflection on the merits of the case. We merely examine
the evidence through the filter of an abuse of discretion standard in upholding the trial court's
decision.
7. The Investors claim that because subsequent evidence conclusively disproved the Doctors'
evidence of lack of capacity in area hospitals, the court erroneously relied on lack of capacity as
a basis for the temporary injunction. However, the Investors did not produce the subsequent
evidence regarding existing hospital capacity during the hearing on the application for a temporary
injunction. They presented the evidence at the hearing on the motion to dissolve the temporary
injunction. As we discuss later, the trial court was under no duty to revisit the validity of its
order granting the temporary injunction absent changed circumstances or fundamental error.
8. Universal Health Services, along with other shareholders, incorporated RCW of Edmond,
Inc. (RCW). RCW currently manages the hospital on the first floor of the Center. The Investors
argue that because Universal is only one investor in the hospital, owns neither the land nor the
building that houses the Center, and was not a party to any of the agreements, the court should
not have considered Universal's balance sheets in balancing the equities.


R WP="BR1">
CONCLUSION

 Having overruled all of the Investors' points of error and determined that the trial
court did not abuse its discretion in granting the Doctors' application for a temporary injunction
or in denying the Investors' motion to dissolve the temporary injunction, we affirm both trial-court
orders.



 
 

 Bea Ann Smith, Jus