Opinion issued November 29, 2007

















In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00434-CV




PRODUCTION INSTRUMENTS SALES AND SERVICE, INC. D/B/A
CROFT SERVICES AND ENERGY MAINTENANCE SERVICES
GROUP I, L.L.C., Appellants

V.

FRANK CROFT, Appellee




On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2007-16359





MEMORANDUM OPINION
          This is an accelerated appeal from the trial court’s denial of a request to issue
a temporary injunction. See Tex. R. App. P. 28.1; see also Tex. Civ. Prac. & Rem.
Code Ann § 51.014(a)(4) (Vernon Supp. 2007). In one issue, appellants assert that
the trial court abused its discretion by finding that the parties’ noncompetition
agreement was not legally enforceable.
          We affirm.
Background
          Production Instruments Sales and Service, Inc. d/b/a Croft Services sells,
services, repairs, and installs pneumatic and electronic flow measurement and gas
control products, services, and systems to oil and gas well sites. In May 2005, Frank
Croft, the sole and founding owner of Croft Services, sold the company to Energy
Maintenance Service Group I, L.L.C. (“EMS”). Two days later, the parties signed a
noncompetition agreement, which provided that:
[Croft] shall not, directly or indirectly, engage or invest in, own,
manage, operate, finance, control, or participate in the ownership,
management, operation, financing, or control of, be employed by, or
render services or advice or other aid to, or guarantee any obligation of,
any person engaged in or planning to become engaged in any other
business located within a 200 mile radius of Kirvin, Texas, that is in
competition with any business carried on by the Corporation or any of
its affiliates (each a “Competing Business”) . . . .
 
Neither “Corporation” nor “Competing Business” is defined in the stock purchase
agreement or the non-competition agreement.
          After the sale, Croft began working as a consultant for Valence Operating
Company, which had been one of Croft Services’ largest customers for three years
prior to the sale. Croft consulted as a subcontractor for EMS, which billed Valence
directly and then paid Croft, less its markup and 25% share of his fees. As a
consultant for Valence, Croft did the same kind of work that he had done prior to the
sale of his company. 
          In fall 2006, Croft resigned as a subcontractor for EMS, and he accepted a
position as a field foreman for Valence, i.e., as a salaried, direct employee of Valence. 
Croft testified that none of his field-foreman work is the same as the work he did for
Valence before the sale of his company. As a field foreman, Croft authorizes
contractors to do certain jobs, ordinarily selecting them from a Valence-approved
vendor list. Croft testified that he assigned all pneumatic safety system work to EMS
until EMS sued him. 
          In March 2007, EMS and Croft Services sued Croft for breach of the
noncompetition agreement. In addition, they sought a temporary injunction to
prohibit Croft from deleting information from his computers and from “engaging in
competition in violation of the [stock purchase agreement] and the Non-Competition
Agreement.” 
          After granting a temporary restraining order, the trial court held an evidentiary
hearing in April 2007 on the application for temporary injunction. At the hearing,
Harvey Schnitzer, EMS’s chief financial officer, testified that EMS had seen a steep
decline in revenue from Valence since Croft had become a Valence employee. He
also testified that if Croft were to solicit business from other clients, Croft Services
would suffer, but he could not quantify the damage. EMS and Croft Services argued
that they were irreparably harmed by Croft’s actions because of the decline in
business and because Croft’s actions established a precedent that could, in the future,
lead Croft to start a new business to compete directly with EMS and Croft Services. 
          The trial court denied the application for temporary injunction without findings
of fact or conclusions of law. The trial court, did, however, cite John R. Ray & Sons,
Inc. v. Stroman, which held a non-competition agreement unenforceable. 923 S.W.2d
80, 84–86 (Tex. App.—Houston [14th Dist.] 1996, writ denied). EMS and Croft
Services appealed. 
Standard of Review
          We review the denial of an application for temporary injunction for abuse of
discretion. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). A trial
court abuses its discretion when it acts without reference to guiding rules or
principles; a trial court does not abuse its discretion if some evidence reasonably
supports its decision. Id. In an interlocutory appeal from the grant or denial of an
application for temporary injunction, we decide only whether the court abused its
discretion: we do not resolve the merits of the underlying case. Tex. Indus. Gas v.
Phoenix Metallurgical Corp., 828 S.W.2d 529, 532 (Tex. App.—Houston [1st Dist.]
1992, no writ). Therefore, we do not reach the ultimate issue of whether the
noncompetition agreement is enforceable under Texas law. Reach Group, L.L.C. v.
Angelina Group, 173 S.W.3d 834, 837 n.3 (Tex. App.—Houston [14th Dist.] 2005,
no pet.). In addition, because the trial court did not make findings of fact or
conclusions of law, we will uphold the trial court’s order on any legal theory
supported by the record. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978).
Temporary Injunction
          At a hearing for a temporary injunction, the only question before the trial court
is whether the applicant is entitled to preserve the status quo pending trial on the
merits. Tex. Indus. Gas, 828 S.W.2d at 532. Because it is an extraordinary remedy,
a temporary injunction will not issue without pleading and proof of: (1) a cause of
action against the defendant; (2) a probable right to the relief sought; and (3) a
probable, imminent, and irreparable injury in the interim. Butnaru, 84 S.W.3d at 204. 
A trial court may issue a temporary injunction to prevent a threatened injury, but the
act to be enjoined must be more than speculative and the injury that flows from the
act must be more than conjectural. Tex. Indus. Gas, 828 S.W.2d at 532. The injury
to be prevented must also be irreparable, i.e., such that the injured party could not be
adequately compensated in damages or such damages would not be capable of
measurement by any certain pecuniary standard. Butnaru, 84 S.W.3d at 204. 
Generally, a court will not enforce contractual rights by injunction, because a party
can rarely show that breach of contract damages are an inadequate legal remedy. Id.
at 211. 
Discussion
          Appellants’ sole issue in this appeal is that the trial court “abused its discretion
as a matter of law when it incorrectly determined that the Non-Competition
Agreement . . . was not legally enforceable as written.” Because this issue goes to the
merits of the appeal, this question is not properly before us in an interlocutory appeal
from the denial of a temporary injunction. Reach Group, 173 S.W3d at 837 n.3. 
Moreover, appellants failed to show that the threatened injury was imminent or
irreparable. EMS’s chief financial officer speculated that if Croft solicited other Croft
Services or EMS customers, such solicitation would damage the business and make
it difficult if not impossible for Croft Services or EMS to regain the client.
          In addition, EMS and Croft Services argued that Croft’s actions set a precedent
for Croft possibly to violate the noncompetition agreement in the future. However,
there is no evidence in the record that Croft had solicited other EMS and Croft
Services clients or that he intended to do so in the future. To the contrary, the
evidence showed that Croft had accepted a position with Valence. Moreover, there
is no evidence that the alleged, potential harm to EMS or Croft Services is not
capable of measurement by any certain pecuniary standard. Therefore, we conclude
that the trial court did not abuse its discretion by denying the application for
temporary injunction because there was no proof of imminent and irreparable harm
to be enjoined. 
          We overrule appellants’ only issue.
Conclusion
          Having overruled appellants’ sole issue, we affirm the order of the trial court. 
The Clerk of this Court is directed to issue the mandates immediately. See Tex. R.
App. P. 18.6.
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.