**TEXAS BLACK IRON, INC., Appellant**

v.

**ARAWAK ENERGY INTERNATIONAL LTD., Appellee**

**NO. 14-16-00929-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed July 11, 2017

Robert M. Corn, Houston, TX, for Appellant.

Maryann Zaki, David A. Baay, Houston, TX, for Appellee.

Panel consists of Justices Boyce, Jamison, and Brown.

## OPINION

Marc W. Brown, Justice

Texas Black Iron, Inc. (TBI), and Arawak Energy International Ltd. entered into a purchase order for certain oil and gas drilling equipment. Arawak prepaid TBI for the entire purchase order. TBI failed to deliver certain equipment and paid Arawak a partial refund. Arawak returned some of the delivered equipment and sought a refund under the buy-back provision of the purchase order. TBI refused. Arawak filed claims against TBI for breach of contract and suit on sworn account. Arawak also applied for a temporary injunction. After a hearing, the trial court granted Arawak a temporary injunction precluding TBI from altering, pledging, or reselling any of the equipment that Arawak had returned to TBI and from frustrating Arawak's attempts to sell the returned equipment. We affirm the temporary injunction.

## I. BACKGROUND

TBI is a Texas corporation that distributes oil and gas drilling equipment. Arawak is a United Arab Emirates limited company that provides oil and gas exploration and development services. On February 22, 2016, TBI and Arawak executed a purchase order. Under the purchase order, TBI agreed to supply Arawak with various sizes and quantities of casing and pup joints at set prices. The purchase order included this provision:

BUY-BACK CONDITION. 75% OF PURCHASE VALUE AFTER DELIVERY OF RETURNED CASING TO VENDOR'S UMM AL QUWAIN YARD AND INSPECTION AT BUYER'S COST.

Arawak prepaid TBI the total amount of just over $2.8 million for the equipment. TBI did not deliver the 13-5/8" casing and pup joints, for which Arawak had paid TBI over $1.1 million. TBI refunded Arawak $400,000 for the 13-5/8" equipment. Arawak further sought a refund from TBI for $768,304 under the buy-back provision for all of the 26" casing, a portion of the 20' casing, and one 20" casing pup joint. TBI did not refund any of this amount.

In October 2016, Arawak filed suit against TBI for breach of contract and suit on sworn account. Arawak alleged that TBI owed $1,481,047 for its breach of the purchase order and on the sworn account. Arawak also requested that the trial court issue a temporary restraining order (TRO) and a temporary injunction. TBI brought counterclaims against Arawak, alleging breach of contract, fraud, fraudulent inducement, and violations of the Texas Deceptive Trade Practices Act. The trial court entered a TRO that enjoined TBI from altering, pledging, or reselling the returned equipment.

The trial court held a hearing on Arawak's application for temporary injunction. Jon Nelson testified for Arawak. According to Nelson, Steve Yamin, president of TBI, told Nelson that TBI could not pay Arawak the 75-percent buy-back price because "the industry was in a serious downturn and that the pipe itself was essentially, basically marketable at ten cents on the dollar and he did not have the money to pay [Arawak] back." Nelson did not believe Yamin intended to honor the buy-back provision because:

- "[h]e did not believe he had an obligation to honor the 75 percent commitment";

- "he did not have the funds to pay"; and

- "there's no money and there's no intent and the fact that the purchase price for that property, that asset had fallen so significantly in these hard times, he wasn't going to do that."

Yamin also told Nelson that business was "as bad as he could remember." Nelson stated he was concerned that without an injunction Yamin could sell the returned equipment and the funds could be "converted because there are still funds owed to us." Nelson also stated he was concerned that TBI's assets could become "tied up in bankruptcy" because of two monetary judgments against TBI. Nelson believed that the returned equipment was "an asset and it's ours and we should be able to mitigate our damages" "by sale to a third party."

Yamin testified for TBI. According to Yamin, the lawsuit was about the contract and "money." Yamin stated that TBI had rights to the returned equipment and would not protect it while the underlying dispute was being resolved.

The trial court signed an order granting temporary injunction. The trial court found that "good cause exists for the issuance of a Temporary Injunction." The trial court stated: "It appears to the Court that harm is imminent to Arawak, and if the Court does not issue the temporary injunction, Arawak will be irreparably injured because [TBI] may alter, destroy, or resell the drilling equipment that is at issue in this dispute, which would interfere with Arawak's attempt to mitigate its damages." The trial court further stated:

The potential injury to Arawak is irreparable if TBI is not enjoined from altering, pledging, or reselling any of the equipment that Arawak has returned to TBI because Arawak will lose its ability to recover any damages in the event [TBI] becomes insolvent or is otherwise unable to satisfy any judgment issued as a result of Arawak's claims against them.

The order provided:

1. TBI and/or any of its officers, agents, servants, employees, attorneys, representatives, or any person in active concert or participation with them are ENJOINED from altering, pledging, or reselling any of the equipment that Arawak has returned to TBI; and

2. TBI and/or any of its officers, agents, servants, employees, attorneys, representatives, or any person in active concert or participation with them are ORDERED that they must not frustrate any attempts made by Arawak and/or its agents to sell the equipment that has been returned to TBI.

A footnote specified that the equipment at issue included "the 1,023.2 units of 26" casing, the 1,421.6 units of 20" casing, and the 20" Casing Pup Joint, 3 meters that was returned to TBI pursuant to the 'buyback' provision in the parties['] Purchase Order."

The order set a bond at $4,000 and set trial for May 29, 2017. TBI timely filed its interlocutory appeal. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2015 & Supp. 2016).[1]

---

1. In the interim, Arawak filed an emergency motion for relief pursuant to Texas Rule of Appellate Procedure 29.4, alleging that TBI was in contempt of the temporary injunction for refusing to release the 20" casing for resale to a ready buyer. We granted Arawak's

## II. Analysis

TBI brings seven issues; they essentially reduce to two.[2] First, in five issues, TBI argues that the trial court abused its discretion when it granted the temporary injunction. TBI contends: (1) damages for breach of contract are an adequate remedy and preclude injunctive relief; (2) the trial court misapplied the law to the facts; (3) Arawak did not prove it was entitled to injunctive relief; (4) injunctive relief is not available to secure Arawak's potential claims; and (5) none of the grounds for the extraordinary remedy of attachment, sequestration, or garnishment is present. Second, in two issues, TBI argues that the temporary-injunction order fails to set forth sufficient reasons for its issuance as required by Texas Rule of Civil Procedure 683 and is void.

### A. Applicable law and standard of review

"A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Conrad Constr. Co., Ltd. v. Freedmen's Town Pres. Coal.*, 491 S.W.3d 12, 15 (Tex. App.— Houston [14th Dist.] 2016, no pet.). "A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*; *Conrad Constr.*, 491 S.W.3d at 15. The applicant bears the burden of production to offer some evidence of each of these elements. *Conrad Constr.*, 491 S.W.3d at 15. The applicant is not required to establish that it ultimately will prevail at trial, only that it is entitled to preservation of the status quo pending trial. *Id.*; *see Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam).

"An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. For purposes of determining whether to grant a temporary injunction, an adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *Greater Houston Bank v. Conte*, 641 S.W.2d 407, 410 (Tex. App.—Houston [14th Dist.] 1982, no writ); *see Blackthorne v. Bellush*, 61 S.W.3d 439, 444 (Tex. App.— San Antonio 2001, no pet.); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.); *Tex. Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Surko Enters., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App—Houston [1st Dist.] 1989, no pet.).

Whether to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204; *Conrad Constr.*, 491 S.W.3d at 16. Only if the trial court abused that

---

motion and referred the matter to the trial court to hear evidence and grant appropriate relief. The trial court held a hearing and signed an order enforcing the temporary injunction order and ordering that Arawak place the sales proceeds in the registry of the court. TBI filed a motion to review further order pursuant to rule 29.6 and for temporary emergency relief pursuant to rule 29.3. We denied TBI's motion.

**2.** Although TBI lists seven distinct issues in its issues presented, TBI argues issues one through five together and issues six and seven together.

discretion should we reverse an order on injunctive relief. *Butnaru*, 84 S.W.3d at 204. There is no abuse of discretion as long as some evidence reasonably supports the trial court's decision. *Id.* at 211. "A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts." *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The reviewing court must not substitute its judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.*

 We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Conrad Constr.*, 491 S.W.3d at 16. "Our review of the trial court's decision is limited to the validity of its temporary injunction order; we do not consider the merit of the underlying case." *Id.* (quoting *Cameron Int'l Corp. v. Guillory*, 445 S.W.3d 840, 845 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).

## B. No abuse of discretion in granting temporary injunction

 We first consider TBI's argument under sections 2.703 and 2.706 of the Uniform Commercial Code (UCC) that only TBI, not Arawak, has rights in the 20" and 26" equipment. *See* Tex. Bus. & Com. Code Ann. §§ 2.703, 2.706 (West 2009). Section 2.703 outlines the remedies available to a seller when a buyer breaches a contract for the sale of goods. *Id.* § 2.703 & cmt. 1. Section 2.706 governs the resale of goods by a seller as a section-2.703 remedy. *Id.* § 2.706. Arawak responds that it, not TBI, holds claim to the equipment pursuant to section 2.403. *See id.* § 2.403 (West 2009). Section 2.403 provides that

"[a] purchaser of goods acquires all title which his transferor had or had power to transfer." *Id.* § 2.403(a); *see also id.* § 2.401(b) (West 2009) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . .").

To the extent that TBI's argument challenges Arawak's probable right to recover on the merits of its underlying causes of action based on the possible application of the UCC at this preliminary stage, we conclude that the trial court did not abuse its discretion when it considered the evidence put forth at the hearing and made its assessment that Arawak met its burden of production. *See LasikPlus of Texas, P.C. v. Mattioli*, 418 S.W.3d 210, 218 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Arawak presented evidence that:

- the parties executed a purchase order for drilling equipment,
- the purchase order contains a buy-back provision for 75 percent of the purchase value,
- Arawak paid TBI the total amount due,
- TBI did not deliver the 13-5/8" equipment,
- TBI refunded $400,000 of the $1.1 million Arawak paid for the 13-5/8" equipment,
- TBI delivered the 20" and 26" equipment,
- Arawak returned a portion of the 20" equipment,
- Arawak returned all of the 26" casing,
- TBI had possession of all the returned equipment,
- Arawak made "several" requests for a refund under the buy-back provision, and

- TBI did not pay Arawak any refund for the returned equipment.

In addition, with regard to the returned equipment, Nelson stated: "I can see no way that they can claim this is their claim. It was pipe we paid for and owned." When asked whether he disputed "the title" of equipment delivered under the purchase order, Yamin answered, "Once delivered, no."

■ We next consider TBI's challenges to the third temporary-injunction element—specifically, irreparable injury. TBI argues that damages for a breach of contract are considered to be an adequate remedy so as to preclude any injunctive relief. However, simply because an applicant for a temporary injunction seeks money damages for breach of contract as its ultimate relief "does not guarantee that damages are completely adequate as a remedy." *Walling*, 863 S.W.2d at 58 (rejecting argument that applicant must pray for specific performance to be entitled to injunctive relief). While an applicant must provide evidence that an award of damages for breach of contract would be inadequate, it is "not required to show that an award of damages would be wholly ineffectual." *Universal Health Servs.*, 24 S.W.3d at 578. Even the cases cited by TBI recognize it is proper for trial courts to enforce contractual rights by injunction if the applicant presents evidence to establish that monetary damages for an alleged breach would be inadequate. *Compare Butnaru*, 84 S.W.3d at 211 (evidence that dispute concerned real property supported temporary injunctive relief), *with Orix Capital Mkts., LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 45 (Tex. App.—San Antonio 2010, pet. denied) (applicant presented no evidence that money damages for alleged breach would be inadequate).

■ TBI also contends that the preliminary injunction constitutes an improper attachment or sequestration of goods. According to TBI, as a plaintiff that wanted to protect its right to collect a potential judgment, Arawak was required to follow specific attachment, sequestration, garnishment, and receivership statutes in the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 61.001, 62.001, 63.001, 64.001 (West 2008). TBI cites *Alliance Royalties, LLC v. Boothe*, 313 S.W.3d 493 (Tex. App.—Dallas 2010, no pet.), to support its position. *Alliance Royalties* is readily distinguishable. There, the temporary injunction, which the appellate court found was improper, sought to enjoin the defendant from terminating a voluntary contract with a third party that was unrelated to any fraud claim alleged by the applicants. *See id.* at 496–97. Here, in contrast, where Arawak sought to enjoin TBI from conduct concerning particular equipment expressly covered by the parties' own purchase order, we conclude there is "some connection between the claims alleged and the acts sought to be enjoined." *Id.* at 497.

■ TBI's reliance on *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), and *Victory Drilling, LLC v. Kaler Energy Corp.*, No. 04-07-00094-CV, 2007 WL 1828015 (Tex. App.—San Antonio June 27, 2007, no pet.) (mem. op.), likewise is misplaced. These cases represent the general rule prohibiting an injunction to secure the legal remedy of damages by freezing a defendant's assets that are completely unrelated to the subject matter of the suit. *See Victory Drilling*, 2007 WL 1828015, at

*2 (discussing cases).[3] However, this general rule does not preclude relief under circumstances where the very assets at issue in the preliminary injunction are at issue in and may be used to satisfy claims in the parties' dispute. *See id.* at *3; *Nowak v. Los Patios Inv'rs, Ltd.*, 898 S.W.2d 9, 11 (Tex. App.—San Antonio 1995, no writ). Here, Arawak presented evidence that the particular 20" and 26" drilling equipment it sought to enjoin related to and would be used to mitigate Arawak's claims related to its purchase of these items.

■■■ Having determined the trial court had the authority to issue a temporary injunction, we next address (and reject) TBI's arguments that Arawak did not present sufficient evidence of TBI's potential insolvency to meet the element of irreparable injury. Texas cases hold that a plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial. *See, e.g., Rocklon, LLC v. Paris*, No. 09-16-00070-CV, 2016 WL 6110911, at *13 (Tex. App.—Beaumont Oct. 20, 2016, no pet.) (mem. op.); *Fischer v. Rider*, No. 02-10-00294-CV, 2011 WL 167226, at *5 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.); *Donaho v. Bennett*, No. 01-08-00492-CV, 2008 WL 4965143, at *4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2008, no pet.) (mem. op.); *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 621 (Tex. App.—Dallas 2004, no pet.); *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 611 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Blackthorne*, 61 S.W.3d at 444; *Tex. Indus. Gas*, 828 S.W.2d at 533; *Surko Enters.*, 782 S.W.2d at 225; *Ballenger v. Ballenger*, 694 S.W.2d 72, 76 (Tex. App.—Corpus Christi 1985, no writ).

TBI first argues that Nelson's testimony was "vague" and "general." We disagree. Nelson discussed meetings with Yamin that took place in March, August, and September 2016. Nelson provided specific details of his communications with Yamin. With regard to the returned equipment allegedly subject to the buy-back provision, Yamin told Nelson that the industry was in a serious downturn "in these hard times," casing was "marketable at ten cents on the dollar," business was "as bad as he could remember," and that he did not have the money or funds to pay Arawak. Yamin explicitly told Nelson that "there's no money." With regard to the 13-5/8' equipment that TBI never delivered, Yamin provided Nelson with an estimate that TBI should have realized a profit of $225,000, leaving a balance of $875,000.

---

3. In *De Beers*, the United States brought suit against foreign defendants that allegedly were conspiring to restrain and monopolize commerce of the United States in violation of the Sherman Act and the Wilson Tariff Act. 325 U.S. at 214–15, 65 S.Ct. 1130. The Court concluded that a preliminary injunction enjoining the defendants from withdrawing or selling any property located in the United States was improper where it "deal[t] with a matter wholly outside the issues in the suit" and "with property which in no circumstances can be dealt with in any final injunction [to restrain violative conduct] that may be entered." *Id.* at 215, 219–20, 65 S.Ct. 1130. In *Grupo Mexicano*, the preliminary injunction at issue prevented the defendant from transferring its rights in notes issued by the Mexican government under a toll road construction project pending adjudication of the plaintiffs' contract claims. 527 U.S. at 312–13, 119 S.Ct. 1961. The Court concluded that the district court lacked authority to issue this injunction where the applicants were general creditors that sought to collect on an unrelated legal debt and claimed no lien or equitable interest in the toll road notes. *Id.* at 310, 325, 331, 333, 119 S.Ct. 1961. The *Victory Drilling* court reversed a preliminary injunction that sought to secure the plaintiff's tort and contract damages arising out of a drilling agreement by securing assets of the defendant that were "unrelated to the subject matter of the suit." 2007 WL 1828015, at *1–3.

However, TBI only refunded $400,000 of the $1.1 million Arawak paid for the 13-5/8' equipment. Nelson also testified that he was aware of two money judgments against TBI. Nelson expressed his concerns that the returned equipment could be converted or tied up in bankruptcy and that Arawak would not be able to mitigate its damages by selling the returned equipment to a third party.

In addition, TBI argues that Arawak's evidence did not meet the definition of "insolvent" under federal or Texas law. *See* 11 U.S.C.A. § 101(32)(A) (Westlaw through Pub. L. No. 115-30); Tex. Bus. & Com. Code Ann. § 1.201(b)(23) (West 2009 & Supp. 2016). TBI does not provide, and we have not located, any case authority that provides, much less strictly requires, analysis of whether a defendant's evidence meets the statutory definition of insolvent in the context of reviewing a temporary injunction. Instead, Texas courts have held temporary injunctions proper where the applicant presented evidence that a defendant was potentially insolvent or judgment proof similar to that presented by Arawak here. *See, e.g., Donaho*, 2008 WL 4965143, at *4 (statements that "Bank is empty" and "there is a risk of the venture being insolvent"); *Blackthorne*, 61 S.W.3d at 444 ("If the Blackthornes are permitted to transfer the Stock unimpeded by this proceeding, it appears that they become judgment proof."); *Tex. Indus. Gas*, 828 S.W.2d at 533–34 (cash-flow problems); *Surko Enters.*, 782 S.W.2d at 225 (financial distress). The trial court was free to believe or disbelieve Nelson and Yamin, and to weigh their credibility. *See Rocklon*, 2016 WL 6110911, at *8; *Loye*, 156 S.W.3d at 620; *Blackthorne*, 61 S.W.3d at 445. Moreover, Yamin did not dispute that he made statements regarding TBI's lack of money and funds to Nelson. *See Tex. Indus. Gas*, 828 S.W.2d at 534.

Viewing the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in favor of the ruling, as we must, we conclude TBI has not shown that the trial court abused its discretion in granting the temporary injunction. We overrule TBI's first through fifth issues.

## C. Compliance with rule 683

Within its sixth and seventh issues, TBI argues that the temporary injunction did not sufficiently set forth the reasons for its issuance as required by rule 683 of the Texas Rules of Civil Procedure and therefore is void. In relevant part, rule 683 requires every order granting a temporary injunction to state the reasons for its issuance and to be specific in its terms. Tex. R. Civ. P. 683; *Kelley v. Ivey*, No. 14-14-00686-CV, 2015 WL 4387941, at *5 (Tex. App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op.). An order that fails to comply with rule 683 "is subject to being declared void and dissolved." *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam); *Higginbotham v. Clues*, 730 S.W.2d 129, 129 (Tex. App.—Houston [14th Dist.] 1987, no writ).

The trial court recited that absent injunctive relief Arawak will be irreparably injured because TBI may alter, destroy, or resell the drilling equipment at issue, which would interfere with Arawak's attempt to mitigate its damages. The trial court also recited that the potential injury to Arawak is irreparable if TBI is not enjoined from altering, pledging, or reselling any of the returned drilling equipment because Arawak will lose its ability to recover any damages in the event TBI becomes insolvent or otherwise is unable to satisfy any judgment issued on Arawak's claims.

TBI argues that "[t]hese statements are conclusory and lack specificity in that they fail to articulate a nexus between actions by [TBI] that are restrained and an irreparable injury that cannot be adequately compensated in money damages." We conclude that each of the trial court's recitations is sufficiently specific in describing the requisite injury and in articulating a legally-sufficient reason why the probable injury is an irreparable one for which there is no adequate legal remedy. *See Kelley*, 2015 WL 4387941, at \*5. Moreover, the order sufficiently links TBI's restrained actions not to alter, pledge, or resell the returned equipment and not to frustrate Arawak's attempts to sell the returned equipment with the irreparable injuries of Arawak's not being able to mitigate its damages or even recover damages at all on that equipment.

We hold that the trial court's order complied with rule 683. We overrule TBI's sixth and seventh issues.

### III. Conclusion

Accordingly, we affirm the trial court's order granting temporary injunction.