**Opinion issued August 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00660-CV

———————————

**AXIS ENERGY MARKETING, LLC, Appellant**

**V.**

**APRICUS ENTERPRISES, LLC, Appellee**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-47355**

---

## MEMORANDUM OPINION

In this accelerated appeal, appellant Axis Energy Marketing, LLC appeals the trial court's order granting appellee Apricus Enterprises, LLC's application for temporary injunction in the underlying lawsuit. In two issues, Axis contends that the trial court abused its discretion in (1) granting the temporary injunction because

Apricus failed to establish a substantial likelihood of irreparable harm and that the threatened injury outweighs the threatened harm the injunction may cause Axis, and (2) reducing Apricus's bond. We reverse and remand.

## Background

Apricus is a purchasing and gathering company and crude oil supplier that handles, stores, and transports crude oil to its customers, including Axis. Axis is a crude oil broker that procures crude oil from suppliers for delivery to its customers.

### A.    Factual Background

In January 2023, Apricus entered into an agreement with Axis to supply Axis with 500 barrels of crude oil per day beginning in February. The agreement between the parties extended into March for approximately 3,500 barrels per day through the end of the month. The agreement provided that Texas law governed and it incorporated the 2017 ConocoPhillips Company General Terms and Conditions for Commercial Crude Oil ("GTC COP 2017").

Under the agreement and the GTC COP 2017, Axis was required to pay Apricus on or before the twentieth day of the month for the crude oil delivered the previous month. Section H of the GTC COP provides:

> At any time after the occurrence of an Event of Default, the other party (the "Non-Defaulting Party") shall have the right, at its sole discretion, to suspend performance, and/or to terminate and liquidate this Agreement upon giving written notice to the Defaulting Party. Upon termination, the parties shall have no further rights or obligations with respect to this Agreement, except for the payment

2

of the amount(s) (the "Settlement Amount" or "Settlement Amounts") determined as provided in Paragraph (2) of this section and any unpaid amounts.

An "Event of Default" includes "(a) the failure to make, when due, any payment required hereunder, if such failure is not cured within 2 Business Days of written notice; (b) the failure to timely provide Payment Assurance; or (c) the occurrence of an Insolvency Event." An "Insolvency Event" occurs when a party is "generally unable to pay its debts as they become due." Under the parties' agreement, Apricus warranted that the crude oil it delivered "shall not be contaminated" and agreed to "indemnify, defend and hold harmless Axis from and against all losses, liabilities, costs, expenses, demands, actions, suits, damages, settlements, judgments, and claims from any and all persons, arising from or out of any incident related to the product that occurs before its delivery to buyer under this agreement."

In March 2023, at Axis's direction, Apricus delivered crude oil to three designated locations: Anchor Halley 2 WTS, Andrew #7, and Enterprise Midland #7. In total, Apricus delivered 79,310.27 net barrels of crude oil to the three locations that month. The total amount due to Apricus was $5,668,654.53 for the barrels delivered in March.

On April 20, 2023—the date Axis's payment for the March barrels was due—Axis did not pay Apricus. Instead, Axis sent a letter to Apricus stating that it

"will not be able to settle those open amounts as Axis' downstream counterparty, Delek (DK Trading & Supply, LLC) [('Delek')] is withholding payment in full to Axis for all March deliveries." Axis stated that Delek was alleging a quality issue for the crude oil that Apricus delivered to Axis at Midland #7, which Axis then sold to Delek, and that Delek had filed a lawsuit based on its crude oil quality claim.[1] It further stated, "Axis believes there to be no basis for Delek's refusal to pay and that the lawsuit is baseless, but in the absence of a payment of such a significant amount to Axis, we do not have the resources to pay Apricus as scheduled."

In response, Apricus acknowledged Axis's concerns about Delek but stated that "the matter between Delek and Axis is separate and distinct from our agreement with Axis," and that "Axis's failure to collect payment from its buyer does not absolve or release [Axis] from [its] obligation to compensate Apricus for the barrels delivered."

Apricus later learned that Axis had sold the approximately 30,664.92 barrels of crude oil that Apricus had delivered to the Anchor Halley 2 WTS and Andrew #7 locations, worth $2,180,729.43, to other downstream counterparties, and that Axis had received payment for those barrels. According to Apricus, Axis

---

[1] Delek sued Axis for breach of contract, fraud, negligence, and gross negligence based on the alleged contamination of the crude oil delivered to Midland #7 in March 2023, in the 385th District Court of Midland County, Texas (the "Midland suit").

suggested it would become insolvent if Apricus sought and obtained a judgment for the outstanding amount owed.

## B.    Trial Court Proceedings

Apricus sued Axis for breach of contract, suit on sworn account, and in the alternative, quantum meruit.  Apricus sought a temporary restraining order and a temporary injunction, requesting that Axis be enjoined from transferring or distributing any of its assets, or at the very least the $2.18 million it received for delivery of the March barrels, until a temporary injunction hearing could be held. Apricus also sought recovery of its court costs and attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code.[2]  The trial court denied Apricus's application for temporary restraining order and set its application for temporary injunction for hearing.

Apricus also filed an emergency motion for expedited discovery limited to Axis's financial status and information related to the payments Axis received for the sale of any of the March barrels to its counterparties.  The trial court granted Apricus's emergency motion.

Axis filed a motion to transfer venue and plea in abatement, asserting that the trial court in Midland County where Delek had filed suit against Axis had dominant jurisdiction over Apricus's suit because the Midland suit was filed first

---

[2]    *See* TEX. CIV. PRAC. REM. CODE ANN. §§ 38.001–.006.

5

and the cases were inherently interrelated. The trial court denied Axis's motion to transfer and plea in abatement and later its motion for reconsideration of the motion and plea.

The trial court held a temporary injunction hearing on August 18, 2023. Three witnesses testified: Joseph Tanner, Logan Parker, and Byron Biggs.

Tanner, Apricus's Executive Director, is responsible for the day-to-day operations of the company. Tanner testified that Axis paid Apricus for its delivery of crude oil in February 2023, but it failed to pay Apricus for its delivery of approximately 78,000 barrels of crude oil, which totaled over $5.6 million in March 2023. On April 20, 2023, the date that payment for the March barrels was due, Tanner received a letter from Axis stating that it was not going to be able to pay for the March barrels because Delek had not paid Axis. Tanner testified that Axis's nonpayment had disrupted Apricus's business, and he was concerned about its ability to pay its vendors.

Parker is Apricus's Director of Marketing. Parker testified that Apricus has three offload stations for delivery of crude: Enterprise Midland #7, Andrew #7, and Anchor Halley 2 WTS. Parker testified that Axis did not pay Apricus the approximately $3.5 million it owed for the crude oil delivered to the Midland station, $1.4 million for crude oil delivered to the Andrews station, or the $751,000 for crude oil delivered to the Halley station.

Parker received a letter from J.C. Moon, Axis's President, dated June 20, 2023, stating that Delek had not paid Axis for Apricus's deliveries to the three stations. The letter stated that while Axis did not believe any basis existed for Delek's refusal to pay and that its lawsuit against Axis was baseless, "in the absence of a payment of such a significant amount to Axis, we do not have the resources to pay Apricus as scheduled." Parker testified that Moon told him during a telephone call that Delek's nonpayment to Axis was the only reason that Axis was not paying Apricus for the March deliveries.

Following Parker's testimony, Apricus's counsel introduced Axis's financial records produced in discovery as evidence of Axis's alleged insolvency. The records included (1) Axis's Accounts Payable Aging Summary, (2) Axis's Accounts Receivable Aging Summary, (3) Axis's Balance Sheet as of May 31, 2023, (4) Axis's 2023 Profit and Loss Statement, and (5) Axis's bank statements.

The accounts payable summary showed that, as of May 2023, Axis owed a total of $25,170,030.45, which included the $5,576,245.27 it owed to Apricus. Its accounts receivable totaled $33,654,191.65 as of May 2023, which included $8,675,784.35 in receivables from Delek.

Axis's balance sheet, as of May 31, 2023, showed that Axis had approximately $4 million in cash on hand and $33,659,070.88 in receivables,

totaling $38,417,855.55 in total current assets.  The balance sheet showed that Axis owed a total of $36,364,416.46.

Axis's Profit and Loss Statement for January through June 2023 showed its gross profit and net income during this period as follows:

|  | January | February | March | April | May | June | TOTAL |
|---|---|---|---|---|---|---|---|
| Gross Profit | 378,481.07 | 362,394.54 | 386,988.22 | -31,834.64 | -801,660.89 | 161,740.58 | 456,108.88 |
| Net Income | 253,568.44 | 247,558.98 | 273,308.57 | -114,822.72 | -955,591.67 | 51,667.77 | -244,310.63 |

Axis's bank statements showed that as of July 31, 2023, Axis had more than $4,056,604.06 in its operating account.

Apricus's counsel argued that Apricus had met all three elements entitling it to injunctive relief.  First, Apricus had a cause of action against Axis.  Second, it had established through witness testimony and exhibits that Axis had defaulted under the terms of the parties' agreement, and therefore, Apricus had a probable right to the requested injunctive relief.  Third, Apricus had shown probable, imminent, and irreparable injury.

Axis called Byron Biggs to testify.  Biggs is a company partner and reviews Axis's financial statements on a monthly basis.  Biggs testified, in relevant part, as follows:

Q.    Is Axis insolvent?

A.    No.

Q.    Why not?

8

A.     Well, we have $4 million in the bank.  We have an ongoing business that we lost – yes, we lost money in May and June – or in April and May, but that was directly attributable to the issues that we've had with Delek which were essentially caused by the contaminated crude that we received at – at Midland Enterprise.

In addition to that, what – what point needs to be made clear is that Delek, we made other deliveries to Delek in other locations in the Permian Basin, they – that they are claiming an offset provision that gives them the ability to offset and hold everything because of the contamination at Midland Enterprise which puts us in a really, really tough spot because they're – they are additionally not paying us in – in – in other locations beyond Midland Enterprise as well.

Q.     Well, if Axis has 4 million dollar – dollars in the bank, and Apricus says it's entitled to 2.18 million, why has Axis not paid Apricus?

A.     Because if – if – if there is indeed an offset that the court in the Midland case agrees with, then that same offset would apply to the Apricus barrels that were delivered outside of Midland Enterprise.  Now, we have reserved our rights under the agreement to hold those moneys with the understanding that if – if the court agrees in Midland that that offset provision that Delek is claiming is not valid, then our offset – our claimed offset would not be valid as well.

Biggs further testified that Axis's balance sheet "shows $4 million sitting in our bank account as of June 30th."  He acknowledged that the profit and loss statement showed that Axis lost money in April and May 2023, but he stated that it made money in June and July 2023.  According to Biggs, although Axis's financials had not yet been finalized, it looked like "it'll be consistent . . . and improving."  Biggs testified that other than the creditors involved in the Midland

9

suit, Axis had been paying all its creditors on time and in full. When asked what the future held for Axis, Biggs testified:

> A. Well, in the short run, probably a lot of litigation. But – but the reality is, we're – we're – we've kind of gotten over the – the hard part. We're doing fine. We're making money. Again, we have – we have no – no debt out there as far as, you know, debt on the company or credit lines drawn or anything else. We have trade – trade liabilities, but we don't have any – anything else. So, I mean, I personally think that we're – we're headed in the right direction, and things are going to be great.
>
> Q. Does Axis have any plans or is it intending to close its doors any time in the foreseeable future?
>
> A. No.

## C. Temporary Injunction Order

On August 23, 2023, the trial court entered an order granting Apricus's application for temporary injunction, stating:

> The Court therefore FINDS that Apricus has shown a bona fide cause of action against Axis and a probable right to relief against Axis in that it has shown that Axis has breached its contract with Apricus in violation of Texas law by withholding payment due for delivery of crude under the terms of [the] parties' contract with regard to the . . . barrels not delivered to Enterprise Midland Station #7.
>
> Further, the Court FINDS that Apricus has shown that harm is imminent, and that if the Court does not issue the temporary injunction, Apricus will be irreparably injured because without restriction of Axis's assets, Apricus faces irreparable injury given the real and substantial likelihood that Axis is insolvent.
>
> The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. Allowing Axis to transfer or distribute any of its assets, some of

which are owed to Apricus, will cause Apricus irreparable harm as well as partial or complete destruction of the subject matter of the parties' dispute.

The order enjoined Axis "from transferring or distributing any of Axis's assets sufficient to satisfy the $2,180,000.00 that Axis owed to Apricus for the barrels delivered by Apricus to Axis in March 2023 not related to the . . . barrels delivered to Enterprise Midland Station #7 (the 'March barrels') during pendency of this lawsuit."  The trial court set the temporary injunction bond at $2,180,000.00.  Trial was set for April 1, 2024.

Apricus filed an emergency motion to modify the temporary injunction bond, requesting that "the amount of the bond be decreased to $70,954.52, representing 5.5% annual interest (current federal reserve prime rate) of the $2,180,000, to be accrued from today, August 29, 2023, through the trial setting of April 1, 2023."  Apricus asserted that "[t]he amount of $70,954.52 is more than sufficient to protect Axis in the event the injunction was erroneously granted."  Axis responded that the purpose of an injunction bond is to provide protection to the enjoined party—here, Axis—for any possible damages occurring as a result of the injunction.  Axis asserted that the trial court properly set the bond amount at $2,180,000.00 to protect Axis from any possible harm.  On August 31, 2023, the trial court entered an order lowering the injunction bond amount to $100,000.00.  Axis filed this accelerated interlocutory appeal

11

**D.     Related Mandamus Proceeding**

On December 5, 2023, Axis filed a petition for writ of mandamus requesting that this Court direct the trial court to vacate the August 23, 2023 order denying Axis's plea in abatement.[3]   On April 23, 2024, this Court issued an opinion conditionally granting Axis's mandamus petition and directing the trial court to (1) vacate the portion of its August 23, 2023 order denying Axis's plea in abatement and (2) grant the plea in abatement. *See In re Axis Energy Mktg., LLC*, No. 01-23-00906-CV, 2024 WL 1723972 (Tex. App.—Houston [1st Dist.] Apr. 23, 2024, orig. proceeding) (mem. op.).   In accordance with this Court's opinion, the trial court vacated the portion of its August 23, 2023 order denying Axis's plea in abatement, granted the plea, and abated the suit "until after the Midland Suit (as defined in the Plea) is finally adjudicated."

On May 20, 2024, in the instant appeal, Axis filed a "supplemental authority" letter notifying this Panel of the Court's opinion in its mandamus proceeding. *See id*. Axis argued that this Court should reverse the temporary injunction order made the basis of the instant appeal because while the order denying Axis's plea in abatement and the temporary injunction order were entered

---

[3]     *See In re Axis Energy Mktg., LLC*, No. 01-23-00906-CV, 2024 WL 1723972 (Tex. App.—Houston [1st Dist.] Apr. 23, 2024, orig. proceeding) (mem. op.).   On December 12, 2023, in connection with Axis's mandamus proceeding, we granted Axis's motion for emergency relief and stayed all trial court proceedings pending disposition of Axis's petition for writ of mandamus.   This includes a trial on attorney's fees which was previously set for January 19, 2024.

on the same day (August 23, 2024), the temporary injunction application was heard after the abatement denial. According to Axis, "[a]ny actions taken by the trial court after denial of a plea in abatement—including the entry of the temporary injunction and modification of the bond amount—are considered a legal nullity."

Apricus responded to Axis's supplemental authority asserting that abatement does not nullify every subsequent action by the parties or the trial court, and specifically, the abatement did not operate to bar entry of an injunction under the circumstances present in this case. Apricus asserted that the sole authority Axis cited in its letter, *In re Kimball Hill Homes Texas, Inc.*, 969 S.W.2d 522 (Tex. App—Houston [14th Dist.] 1998, no pet.), did not support Axis's argument that an abatement nullifies any action taken by the court or the parties.

## Temporary Injunction

In its first issue, Axis contends that the trial court abused its discretion by granting Apricus's application for temporary injunction because Apricus failed to establish a substantial likelihood of irreparable harm and that the threatened injury to it outweighed the threatened harm the injunction may cause to Axis. In its second issue, Axis asserts that the trial court abused its discretion by granting Apricus's motion to modify the temporary injunction bond and lowering the bond to $100,000.00 as it was unsupported by any evidence and was without any reasonable basis.

13

In response, Apricus argues that this appeal should be dismissed as moot because the trial court entered a summary judgment order on the claims associated with the temporary injunction. Further, it argues that the trial court did not abuse its discretion by granting the application for temporary injunction because Apricus established a substantial likelihood of harm. It further asserts that the trial court's modification of the bond was reasonable and did not amount to an abuse of discretion.

Because mootness affects an appellate court's jurisdiction over an appeal, we first address Apricus's assertion that this appeal is moot. *Charles v. Invum Three, LLC*, No. 01-24-00128-CV, 2025 WL 1759014, at *3 (Tex. App.—Houston [1st Dist.] June 26, 2025, no pet.) (mem. op.).

## B. Mootness

If, during the pendency of an appeal from an order granting or denying a temporary injunction, the trial court renders a final judgment, the case on appeal becomes moot. *Jordan v. Landry's Seafood Rest., Inc.*, 89 S.W.3d 737, 741 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Isuani v. Manske–Sheffield Radiology Group, P.A.*, 802 S.W.2d 235, 236 (Tex. 1991)). The rendition of a final summary judgment by the trial court renders an appeal relating to a temporary injunction moot because the temporary injunction has expired and no longer exists. *See id.* at 742. When a case becomes moot on appeal, all previous orders

14

pertaining to the temporary injunction are set aside by the appellate court and the case is dismissed. *Isuani*, 802 S.W.2d at 236.

The record shows that the trial court entered an order granting Apricus's traditional motion for summary judgment on November 27, 2023. The order stated that "[a]n evidentiary hearing on the recovery of [Apricus's] attorney's fees is set for 1:00 pm on January 19th, 2024"[4] and that Apricus "must serve evidence it intends to use at the hearing to [Axis] by Friday, January 5th, 2024." Apricus asserts that the trial court's intervening summary judgment order is effectively a "final order" that disposed of the substance of the claims associated with the temporary injunction. Apricus further asserts that even if the summary judgment order was not a conventional final judgment, it was a complete resolution on the merits of the issues in the temporary injunction and thus mooted this appeal.[5]

As noted above, in accordance with this Court's April 23, 2024 opinion in the related mandamus proceeding, the trial court vacated the portion of its August 23, 2023 order denying Axis's plea in abatement, granted the plea, and abated the

---

[4] A trial on attorney's fees did not occur on January 19, 2024 because of this Court's stay order issued in the related mandamus proceeding.

[5] Apricus asserts that, at a minimum, this Court should abate the appeal until after the January 19, 2024 hearing on attorney's fees because "a final judgment is likely to be issued shortly thereafter, which would automatically destroy this Court's jurisdiction." The record does not include a final judgment issued by the trial court.

15

suit "until after the Midland Suit (as defined in the Plea) is finally adjudicated."[6] Thus, the underlying proceedings are currently abated and a final judgment has not been entered.

Further, in its suit against Axis, Apricus asserted claims against Axis for breach of contract, suit on sworn account, and in the alternative, quantum meruit, and it also sought attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. REM. CODE ANN. §§ 38.001–.006. The trial court's summary judgment order did not dispose of Apricus's claim for attorney's fees but instead scheduled a hearing on January 19, 2024. *See ZUPT, LLC v. IPOZ Sys., LLC*, No. 01-14-00371-CV, 2014 WL 2538705, at *1 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (concluding summary judgment order that did not resolve parties' claim for attorney's fees was not final and appealable judgment).

Because there is no final judgment in the underlying case, the trial court has abated the underlying proceedings, and the temporary injunction order does not concern the merits of the underlying case, but rather the question of irreparable harm, we conclude that the appeal is not moot.

---

[6] The Midland suit is currently set for jury trial on September 8, 2025. *See In re Molzan*, No. 01-24-01033-CV, 2025 WL 836628, at *1 n.2 (Tex. App.—Houston [1st Dist.] Mar. 18, 2025, orig. proceeding) (mem. op.) (sua sponte taking judicial notice of district clerk's website when considering mootness issue).

## C.    Governing Law

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Id.*; *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam). To obtain a temporary injunction, an applicant is not required to establish that it will prevail upon a final trial on the merits, however, it must plead and prove that it (1) has a cause of action against the opposing party, (2) has a probable right on final trial to the relief sought, and (3) faces probable, imminent, and irreparable injury in the interim. *Butanru*, 84 S.W.3d at 204; *Taylor Hous. Auth. v. Shorts*, 549 S.W.3d 865, 877–78 (Tex. App.—Austin 2018, no pet.). The party applying for a temporary injunction has the burden of production, which is the burden of offering some evidence that establishes a probable right to recover and a probable interim injury. *Dall. Anesthesiology Assocs., P.A. v. Texas Anesthesia Grp., P.A.*, 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006, no pet.). If an applicant does not discharge its burden, it is not entitled to injunctive relief. *Osaka Japanese Rest., Inc. v. Osaka Steakhouse Corp.*, 14-09-01031-CV, 2010 WL 3418206, at *2 (Tex. App.—Houston [14th Dist.] Aug. 31, 2010, no pet.) (mem. op.).

Because this is an interlocutory appeal, our review is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in

17

granting the application for a temporary injunction, and we do not address the merits of the underlying case. *Brooks v. Expo Chem. Co.*, 576 S.W.2d 369, 370 (Tex. 1979) (stating that because "the effect of a premature review of the merits is to deny the opposing party the right to trial by a jury . . . it will not be assumed that the evidence taken at a preliminary hearing on temporary injunction will be the same as the evidence developed at a trial on the merits"). In making this determination, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204. An abuse of discretion does not exist if the trial court heard conflicting evidence, and evidence appears in the record that reasonably supports the trial court's decision. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

## D.   Irreparable Injury

In its brief on appeal, Axis does not challenge the first two elements necessary for Apricus to establish that it was entitled to a temporary injunction, i.e., that Apricus has a cause of action against Axis and Apricus has a probable right to recovery of the relief sought. Rather, Axis argues that the trial court abused its discretion in granting Apricus's application for temporary injunction because the temporary injunction record does not support the trial court's

18

determination that "Apricus faces irreparable injury given the real and substantial likelihood that Axis is insolvent." Apricus responds that the trial court did not abuse its discretion in granting a temporary injunction because it presented ample evidence of Axis's insolvency.

Included within the probable injury element is the element of no adequate remedy at law. *See Kirkland v. Kirkland*, No. 02-22-00469-CV, 2023 WL 3643642, at *11 (Tex. App.—Fort Worth May 25, 2023, no pet. (mem. op.). An injury is irreparable when the injured party cannot be adequately compensated in damages or if damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. An existing legal remedy is adequate if it is as complete, practical, and efficient to the ends of justice and its prompt administration as is equitable relief. *Allied Home Mortg. Cap. Corp. v. Fowler*, 14-10-00992-CV, 2011 WL 2367086, at *4 (Tex. App.—Houston [14th Dist.] June 9, 2011, no pet.) (mem. op.). There is no adequate remedy at law if damages are incapable of calculation or if a defendant is incapable of responding in damages. *Osaka Japanese Rest.*, 2010 WL 3418206, at *2.

Texas courts have held that a plaintiff does not have an adequate remedy at law if the defendant faces insolvency or becoming judgment proof before trial. *See, e.g.*, *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd*., 527 S.W.3d 579, 588 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Rocklon, LLC v. Paris*, No.

19

09-16-00070-CV, 2016 WL 6110911, at *13 (Tex. App.—Beaumont Oct. 20, 2016, no pet.) (mem. op.); *Fischer v. Rider*, No. 02-10-00294-CV, 2011 WL 167226, at *5 (Tex. App.—Fort Worth Jan. 13, 2011, no pet.) (mem. op.); *Donaho v. Bennett*, No. 01-08-00492-CV, 2008 WL 4965143, at *4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2008, no pet.) (mem. op.); *Loye v. Travelhost, Inc.*, 156 S.W.3d 615, 621 (Tex. App.—Dallas 2004, no pet.). Black's Law Dictionary defines insolvency as: "1. The condition of being unable to pay debts as they fall due or in the usual course of business. 2. The inability to pay debts as they mature." *Insolvency*, Black's Law Dictionary (11th ed. 2019). Texas courts have held that not paying other creditors, transferring collateral, and "[being] in a great deal of financial distress," is sufficient evidence to support a temporary injunction. *Tex. Indus. Gas v. Phx. Metallurgical Corp.*, 828 S.W.2d 529, 533–34 (Tex. App.—Houston [1st Dist.] 1992, no writ); *Surko Enters., Inc. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex. App.—Houston [1st Dist.] 1989, no pet.).

In support of its assertion that it presented sufficient evidence of Axis's insolvency, Apricus relies on the following evidence admitted at the temporary injunction hearing:

### 1. April 20, 2023 Letter

On April 20, 2023—the date Axis's payment for the March barrels was due—Axis did not pay Apricus but instead sent a letter to Apricus stating that it

20

"will not be able to settle those open amounts as Axis' downstream counterparty, Delek . . . is withholding payment in full to Axis for all March deliveries." It further stated, "Axis believes there to be no basis for Delek's refusal to pay and that the lawsuit is baseless, but in the absence of a payment of such a significant amount to Axis, we do not have the resources to pay Apricus as scheduled."

Apricus points to the parties' agreement stating that an "'Insolvency Event' occurs when a party is 'generally unable to pay its debts as they become due.'" According to Apricus, Axis's April 20, 2023 letter acknowledged its failure to pay Apricus and that it did not have the resources to pay. Axis, however, argues that its April 20, 2023 letter, when read in the context of the parties' dispute and consistent with Axis's financial documents, informed Apricus only that it would not pay while its downstream customer withheld payment because Apricus delivered allegedly contaminated crude oil, i.e., a material breach of the parties' agreement, not that Axis was insolvent. Axis argues that while Apricus may dispute whether Axis has the right to withhold payment under the parties' agreement, this simply gives rise to the underlying breach of contract claim—it does not transform the dispute into an "Insolvency Event" entitling Apricus to injunctive relief. We agree. Axis's April 20, 2023 letter advising Apricus that it would not pay until the question of whether Apricus breached the parties'

agreement by delivering contaminated crude oil was resolved is not evidence of insolvency.

## 2. Witness Testimony

Tanner, Apricus's Executive Director, testified that Axis paid Apricus for its delivery of crude oil in February 2023, but it did not pay for the delivery of approximately 78,000 barrels totaling over $5.6 million in March 2023. Tanner testified that on the date payment for the March barrels was due, Apricus received a letter from Axis stating that it was not going to be able to pay for the March barrels because Delek had not paid Axis.

Parker, Apricus's Director of Marketing, testified that Axis's April 20, 2023 letter stated that Delek had not paid Axis for Apricus's deliveries to the three stations, and while Axis did not believe any basis existed for Delek's refusal to pay and that its lawsuit against Axis was baseless, "in the absence of a payment of such a significant amount to Axis, we do not have the resources to pay Apricus as scheduled." Parker testified that Moon, Axis's President, told him that the only reason Axis was not paying Apricus was because of Delek's nonpayment to Axis.

Biggs, a partner at Axis who reviews Axis's financial statements monthly, testified that Axis is not insolvent. According to Biggs, Axis's balance sheet "shows $4 million sitting in our bank account as of June 30th." He acknowledged that Axis's profit and loss statement showed that Axis had lost money in April and

May 2023, but it also showed that Axis made money in June 2023. Biggs further testified that Axis made money in July, and while its financials had not been finalized yet, they indicated that "it'll be consistent . . . and improving." Biggs testified that other than the creditors involved in the Midland suit, Axis has been paying all its creditors on time and in full, it had no debt and had not drawn on any credit lines, and it was paying its employees as well as supplying its customers. According to Biggs, Axis does not intend to close its doors. He testified that while Axis would likely be involved in litigation in the short term, Axis had "gotten over the hard part" and is "making money."

Tanner and Parker's testimony is consistent with Axis's April 20, 2023 letter stating that it would not pay Apricus while Delek, its downstream customer, withheld payment due to Apricus's delivery of allegedly contaminated crude oil. Further, Biggs's uncontroverted testimony was that Axis is not insolvent and that other than the creditors involved in the Midland suit, it had no debt and was paying its creditors on time and in full. The testimonial evidence does not support a finding that a substantial likelihood exists that Axis is insolvent.

### 3. Financial Records

The trial court admitted into evidence Axis's financial records at the temporary injunction hearing, including its accounts payable and receivable

summaries, a balance sheet, a 2023 Profit and Loss Statement, and bank statements.

Axis's account summaries showed that, as of May 2023, Axis's accounts payable totaled $25,170,030.45, which included the $5,576,245.27 it owed to Apricus, and its accounts receivable totaled $24,978,407.30. According to Axis, a negative cashflow of approximately $192,000.00, with an additional $4 million in cash as reflected in its bank statement, does not demonstrate a substantial likelihood of insolvency. Axis also points to its balance sheet as of May 31, 2023, showing that it had $33,659,070.88 in accounts receivable and that it had $36,364,416.46 in accounts payable. Axis asserts that adding its $4 million in cash on hand to its accounts receivable shows that its assets outweigh its obligations. Apricus responds that Axis fails to account for the fact that $8.6 million of its $33.6 million in accounts receivable relates to Delek's payment obligation, which is currently the subject of the Midland suit.

Axis's Profit and Loss Statement for January through June 2023 showed that while it suffered profit losses in April and May, it earned profits in January, February, and March, and again in June as shown below:

|  | January | February | March | April | May | June | TOTAL |
|---|---|---|---|---|---|---|---|
| Gross Profit | 378,481.07 | 362,394.54 | 386,988.22 | -31,834.64 | -801,660.89 | 161,740.58 | 456,108.88 |
| Net Income | 253,568.44 | 247,558.98 | 273,308.57 | -114,822.72 | -955,591.67 | 51,667.77 | -244,310.63 |

24

Apricus emphasizes that the profit and loss statement instead shows that Axis suffered steep net income losses in April and May, and that it had only $4 million cash on hand while owing at least $5.7 million to Apricus. According to Apricus, this evidence demonstrates an inability to satisfy an outstanding past-due debt to a creditor, which meets the very definition of insolvency.

The parties cite several cases addressing insolvency in the context of reviewing a temporary injunction order. In *Texas Black Iron, Inc. v. Arawak Energy International Ltd.*, TBI and Arawak entered into a purchase order for certain oil and gas equipment. 527 S.W.3d 579, 582 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Arawak prepaid the entire purchase order, but TBI failed to deliver certain equipment. *Id*. Arawak returned some of the delivered equipment and sought a refund under the buy-back provision of the purchase order, but TBI refused. *Id*. Arawak sued and applied for a temporary injunction. *Id*. After a hearing, the trial court granted Arawak's requested injunctive relief. *See id*.

On appeal, the court rejected TBI's argument that Arawak had not presented sufficient evidence of TBI's potential insolvency to meet the temporary injunction element of irreparable injury. *See id*. at 587. With respect to the returned equipment allegedly subject to the buy-back provision, Arawak's representative testified that TBI's president had told him that the industry was in a serious downturn "in these hard times," certain of the equipment was "marketable at ten

25

cents on the dollar," business was "as bad as he could remember," and he did not have the money or funds to pay Arawak. *See id.* Further, TBI's president explicitly told Arawak that "there's no money." *Id.* The court also noted that TBI had two money judgments against it. *See id.*

Here, by contrast, Biggs testified that Axis is not insolvent and "is making money." He further testified that although Axis had lost money in April and May 2023, it made money in June and July 2023 and, while its financials had not been finalized yet, they indicated that "it'll be consistent … and improving." Biggs also testified that other than the creditors involved in the Midland suit, Axis had been paying all its creditors on time and in full, it had no debt and had not drawn on any credit lines, and it was paying its employees as well as supplying its customers.

In *Surko*, this Court upheld the trial court's granting of a temporary injunction. 782 S.W.2d at 225. There, Surko Enterprises, Inc. sold appliances and furniture to the public on a rent-to-own basis, and Borg-Warner Acceptance Corporation financed and had a security interest in Surko's inventory, accounts receivable, contract rights, and proceeds. *See id.* at 224. After Surko defaulted on its payments, Borg-Warner filed suit against Surko and several other defendants and sought injunctive relief. *See id.* Following a hearing, the trial court entered a temporary injunction. *See id.*

On appeal, Surko asserted there was no evidence that Surko and the other defendants were insolvent and could not pay the outstanding balance of $594,003.07 in principal and interest owed to Borg-Warner. *See id.* at 225. It also pointed to an audit of Surko showing no major problems. *See id.* A Borg-Warner branch manager, however, testified that the audit was a check on Surko's record-keeping procedures; it did not determine Surko's financial worth. *See id.* And the evidence showed that, at the time the temporary injunction was sought, Surko was not paying its other creditors and was transferring cash collateral to the company that had purchased Surko's stock. *See id.* Surko's former vice-president admitted that when he took over Surko, "the company was in a great deal of financial distress." *Id.* This Court concluded that the trial court could have found from this evidence that a temporary injunction was necessary to preserve the collateral. *See id.*

Here, in contrast to *Surko*, the trial court heard Biggs's uncontroverted testimony that other than the creditors involved in the Midland suit, Axis had been paying all its creditors on time and in full, and it had no debt. Biggs also testified that Axis had made money in the two months preceding the temporary injunction hearing and that its financials, although not yet finalized, indicated that things would continue to improve and the company was "headed in the right direction."

27

In *Texas Industrial Gas*, Texas Industrial Gas ("TIG") and Phoenix Metallurgical Corporation ("PMC") executed a contract under which PMC agreed to purchase its entire requirement of Argon gas for five years from TIG. *See* 828 S.W.2d at 531. After TIG began supplying Argon gas to PMC, PMC fell into arrears. *Id*. PMC paid down some of its balance but, at the time of trial, it owed over $16,000 of the balance due. *Id*. Upon learning that PMC was purchasing Argon gas from another source, TIG sought a temporary injunction to prohibit PMC from, among other things, purchasing Argon gas from other suppliers. *Id*. Following a hearing, the trial court refused to temporarily enjoin PMC. *See id*.

On appeal, this Court disagreed, holding that the trial court had abused its discretion in refusing to grant an injunction. *See id*. at 533.[7] In doing so, the Court noted that at the temporary injunction hearing, TIG presented evidence that PMC was "experiencing a cash flow problem," had "greater liabilities than assets," and "PMC offered no evidence at the hearing." *Id*. Thus, the court concluded that "[t]he only evidence in the record demonstrated a probable PMC insolvency and a probability that PMC would not be able to respond in damages to TIG," noting that "it [was] particularly relevant that PMC presented no controverting evidence." *Id*.

---

[7]     One justice dissented, opining that the trial court had not acted outside acceptable boundaries of discretion in deciding the issue of irreparable harm. *See Tex. Indus. Gas v. Phx. Metallurgical Corp*., 828 S.W.2d 529, 535 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (Wilson, J., dissenting).

Here, unlike in *Texas Industrial Gas*, the evidence showed that Axis had $4 million in cash, other than the creditors involved in the Midland suit it had no debt, it was paying its creditors on time and in full, and it had made money in the two months before the temporary injunction hearing.

Based on the record before us, we conclude that the evidence does not support the trial court's determination that "Apricus faces irreparable injury given the real and substantial likelihood that Axis is insolvent." We hold that the trial court abused its discretion in granting a temporary injunction. Accordingly, we sustain Axis's first issue.[8]

## Conclusion

We reverse the trial court's temporary injunction order and remand the case to the trial court for proceedings consistent with this opinion.

Kristin Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[8] In light of our disposition, we do not reach Axis's additional arguments under its first issue, its second issue, or Axis's assertion in its supplemental letter filed with this Court on May 20, 2024 that the temporary injunction is a legal nullity. *See* TEX. R. APP. P. 47.1.